THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST S. BANKS, Defendant-Appellant.

Second District    No. 2—94—1098

---

Opinion filed June 19, 1996.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Anthony M. Peccarelli, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), and William H. Hall IV, of Chicago, for the People.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial, defendant, Ernest Banks, was convicted of criminal trespass to a residence (720 ILCS 5/19—4 (West 1992)). The court sentenced him to one year of court supervision and 40 hours of public service employment. Defendant appeals, raising the following issues: (1) whether his conviction was improper because his entry into the home was authorized; and (2) whether the trial court usurped the jury's fact-finding role with its answer to a jury question. We reverse and remand the cause for a new trial.

Most of the evidence presented at the trial was undisputed. Ronald and Sandra Gales, along with their 17-year-old daughter, Amy, lived at 5522 Middaugh in Downers Grove. Defendant dated Amy from 1991 to early 1993. They remained friends after they stopped dating.

Ronald did not like defendant; he described his relationship with defendant as "hostile." Sometime in late 1992 or early 1993, Ronald had a conversation with defendant about whether defendant was allowed in the Gales' home. Sandra had gone to Amy's room late one evening and found defendant and Amy in bed together. Defendant had entered the house through Amy's window. Ronald testified that he told defendant then that he was not allowed in the house in the future unless he was invited in by a parent and that he must enter the house through the front door. Defendant testified that Ronald told him that he was not allowed to enter the house through a bedroom window, but denied that Ronald ever told him that he was not allowed in the house. Ronald testified that his dislike of defendant was a result of this incident and because he was "picky" about his daughter's boyfriends. He denied that it had anything to do with defendant being African-American.

On the morning of March 24, 1993, Ronald dropped Amy off at school and then returned home. His normal routine was to go to work after dropping Amy off, and he testified that he was not sure why he returned home instead. Upon arriving home, Ronald went to Amy's bedroom and found a note on her nightstand. Ronald discerned from the note that defendant was on his way to the house.

Shortly thereafter, Ronald saw defendant coming across the yard with a duffel bag in his hand. Ronald went upstairs, retrieved a cordless phone and a gun, and then went back downstairs to wait for defendant. When Ronald heard the back door opening, he dialed 911. Ronald concluded that defendant must have heard him on the phone, because the door slammed right after it was opened. Ronald looked outside and saw defendant running away. Ronald testified that he

had never changed his mind about defendant being allowed in the house, and he never told Amy that she could give defendant a key to the house.

Defendant testified that on the date in question he had called Amy and asked if he could come over to study for a test. She said that it would be all right, and she told him that she would leave a key for him on the back porch. When defendant arrived at the Gales' residence, the key was where Amy said it would be. Defendant opened the door about a foot and a half and heard someone talking. He then shut the door and began to walk away. He was arrested when he reached the street.

Amy corroborated defendant's story that he was coming over to the house to study. She told him that it would be all right, and she left a key for him. She also wrote a note to him and left it in her bedroom. In the note, she told him to "have a nice day" and wrote "[i]f anyone comes you know what to do." Amy testified that defendant was only allowed in the house with permission, but gave equivocal responses when asked who was authorized to give that permission.

Glen Treckler, the police officer who arrested defendant, testified that defendant told him that he had a key to the house and that he was "going there to just to [sic] be there for awhile." Treckler further testified that defendant said that he had been told in the past by the father that he was not supposed to be on the property.

During its deliberations, the jury sent out several questions. The first was, "What constitutes authority according to the charge as stated?" The court responded, "For the purposes of this case, a person acts 'without authority' when he acts without a reasonable belief that entry into the residence is authorized." A while later, the jury sent out a note saying, "The jury cannot come to a unanimous decision concerning People v. Banks. Please advise." The judge then had the jury brought into the courtroom. He asked for the numerical breakdown of its vote. The foreman responded that the last two ballots had been six and six and seven and five. The jurors could not decide if they needed more information, so the judge told them to keep deliberating.

The jury later sent out three more questions: (1) "Can you elaborate on the word 'authorized?' " (2) "Does Amy (a minor) have the authority to give permission to enter her parents [sic] home?" and (3) "Does authorization originate from the homeowner or from the frame of mind of the alleged trespasser believing he is authorized?"

The trial judge responded as follows:

> "As to the first question, no specific response could appropriately be provided.

As to the third question, the jury must rely on the instructions and the court's responses already provided.

As to the second question, the jury is informed that as a matter of law authorization for Mr. Banks to enter that residence on that date could only have come from Mr. or Mrs. Gales."

Defense counsel objected to the court's response to the second question. The jury later returned a verdict of guilty.

■ Defendant first argues on appeal that his conviction must be reversed because his entry into the Gales' home was authorized by Amy. According to section 19—4(a) of the Criminal Code of 1961 (720 ILCS 5/19—4(a) (West 1992)), a person commits criminal trespass to a residence "when, without authority, he knowingly enters or remains within any residence." Defendant asserts that this case presents the narrow question of whether a 17-year-old family member and full-time occupant of her family's home can authorize a friend to enter her home for a noncriminal purpose. Defendant points out that, in *People v. Martin*, 115 Ill. App. 3d 103, 106 (1983), this court stated, in *dicta*, that an unemancipated minor living in his parents' house may have the authority to allow others to enter the house for lawful purposes.

■ We do not agree that the issue in this case is whether a minor can authorize others to enter her parents' house. Rather, we view the issue as whether any such authority Amy had was withdrawn by the father. Our research has not disclosed any case addressing whether a minor has the authority to allow a person to enter a house after the parents had told that person he was not allowed on the premises.

We believe that the evidence presented could support a conviction for residential trespass. Assuming the jury believed Ronald's testimony that he told defendant he was not allowed on the premises without permission from Ronald or Sandra, defendant's conviction was proper. We believe that the parents had a superior interest in the home and any authority that Amy might have had to allow defendant in without their permission had been withdrawn. Under this scenario, defendant knew he was not allowed on the property and chose to go there anyway. Thus, there was sufficient evidence presented for the jury to find defendant guilty of residential trespass, and double jeopardy has not occurred. *People v. Hope*, 168 Ill. 2d 1, 35 (1995).

Nevertheless, we must reverse defendant's conviction and remand the cause for a new trial because of the manner in which the trial judge answered a question posed by the jury. The trial judge's response to the jury, that "as a matter of law authorization for Mr. Banks to enter that residence on that date could only have come

from Mr. or Mrs. Gales," took a principal fact question away from the jury and essentially directed a verdict for the State. The above instruction would only be correct if defendant had agreed that Ronald had told him he was not allowed on the property without permission from Ronald or Sandra. Defendant did not do so, but rather denied that he had been told that he needed the parents' permission to enter their house.

The trial judge essentially confessed error in this regard on two occasions. He was under the mistaken impression that there was no factual dispute regarding whether Ronald told defendant he needed permission to enter the house. At one point the judge stated:

"[T]he testimony in the trial left no factual issue, in the court's view, whether or not the father had in fact so informed Mr. Banks. Had there been any question presented, factual question of that sort presented by the testimony, then plainly the answer I gave would have trespassed upon the jury's province as finder of fact."

Later, the judge remarked:

"If the testimony of the case had evidently left it still a matter of fact for the jury to decide whether or not the father, as he testified, had expressly told the defendant that he could not enter without permission of that gentleman, the father or his wife, Mrs. Gales, then indeed, at least arguably, the court's question [sic] would have presumed as [sic] a matter of fact, which of course in [sic] the province of the jury."

■ A judge has wide discretion in deciding whether to respond to a jury question. *People v. Boose*, 256 Ill. App. 3d 598, 604 (1994). The court has a duty to answer the jury's question if clarification is requested, the original instructions are incomplete, the jurors are confused, or the question concerns a point of law arising from the facts over which doubt or confusion exists. *People v. Reid*, 136 Ill. 2d 27, 39 (1990). However, a judge also has a duty to avoid giving the jury his opinion of the evidence, and a judge should not answer a jury question that calls for the judge to make a conclusion on the issues at trial. *Boose*, 256 Ill. App. 3d at 604.

■ Here, we find that the trial judge's comments decided the crucial fact question for the jury and had the effect of directing a verdict of guilty. There was no real dispute whether defendant had made an "entry." Therefore, the only question before the jury was whether that entry was authorized. The judge mistakenly believed that there was no fact question regarding whether Ronald told defendant that he needed permission from Ronald or Sandra to enter the home. Defendant's denial raised a fact question on that issue, but the trial judge's instruction to the jury removed that question from the

jury's consideration by assuming as true Ronald's version of the events.

Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for a new trial.

Reversed and remanded.

RATHJE and HUTCHINSON, JJ., concur.