# Illinois Official Reports

## Appellate Court

---

### *People v. Hasselbring*, 2014 IL App (4th) 131128

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANA R. HASSELBRING, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-1128 |
| Filed | November 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated driving with a drug, substance, or compound in defendant's breath, blood or urine arising from a motorcycle accident in which he struck a fellow rider where defendant consented to giving blood and urine samples to a nurse due to the serious injuries that were involved and the results were positive for benzoylecgonine, a metabolite of cocaine, defendant's conviction was reversed and the cause was remanded for a new trial, since the trial judge, in answering the jury's question as to whether benzoylecgonine qualified as a substance, basically directed a verdict for the State when he incorrectly told the jury that, in conflict with the evidence, "cocaine metabolite qualifies as a drug, substance or intoxicating compound," rather than responding, as both the State and defendant agreed, that the jury should rely on the evidence it heard during the trial. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-CF-880; the Hon. John R. Kennedy, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | James A. Martinkus (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant. |
| | |
| | Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Aimee Sipes Johnson (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Knecht and Turner concurred in the judgment and opinion. |

## OPINION

¶ 1      In September 2013, a jury convicted defendant, Dana R. Hasselbring, of aggravated driving with a drug, substance, or compound in his breath, blood, or urine. 625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2010). In December 2013, the trial court sentenced defendant to 11 years' imprisonment.

¶ 2      Defendant appeals, arguing (1) his prosecution was barred by the compulsory joinder provisions of sections 3-3(b) and 3-4(b)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/3-3(b), 3-4(b)(1) (West 2010)); (2) the test results of his blood and urine samples should have been suppressed where no probable cause existed to justify the warrantless search; (3) the trial court erred in permitting testimony from the State's expert which was not properly disclosed and for which she was not properly qualified; (4) the court erred in refusing defendant's tendered jury instructions; (5) the court erred in the manner it answered the jury's question during deliberations; (6) the evidence was insufficient to convict him where he did not have a controlled substance in his body at the time of the accident; and (7) he received an excessive sentence. We reverse defendant's conviction and remand for a new trial.

¶ 3                                I. BACKGROUND

¶ 4      On the evening of September 18, 2010, defendant and a friend, Eddie Piat, were riding their motorcycles with a group of other riders. Nicholas Vandervinne, an eyewitness who testified at trial, had stopped for a red light at an intersection at approximately 8 p.m. on the night of the incident. He observed a group of six or seven motorcycles in the other lane. When the light turned green, the motorcycles in the front of the group "took off like a flash." Shortly thereafter, Vandervinne observed sparks and smoke ahead of him. Defendant had collided with Piat. Vandervinne did not see the collision.

¶ 5      Officer Brian Bednarz, a certified accident reconstructionist with the Champaign police department, estimated Piat's motorcycle was traveling between 57 and 79 miles per hour at the time of impact. He also estimated defendant was traveling between 60 and 82 miles per hour when he collided with Piat.

¶ 6        Following the accident, both Piat and defendant were taken to the hospital. Piat arrived in critical condition, having sustained a serious head injury as a result of the accident. Neither defendant nor Piat was wearing a helmet.

¶ 7        City of Champaign police officer Brian Greear interviewed defendant at the hospital as part of his investigation of the accident. Defendant told Greear he and Piat were riding in the same lane and had stopped at the red light. When the light changed, they both accelerated from the intersection. After two or three blocks, defendant turned his head to look behind him to check to see if the other lane was open before changing lanes. When he looked back, Piat's motorcycle had rapidly decelerated in front of him. Defendant attempted to apply the brakes but collided with Piat's motorcycle.

¶ 8        Officer Greear then issued defendant two citations. One of the citations charged defendant with failure to reduce speed to avoid an accident. The other citation was for not having a motorcycle license. According to Greear, other than defendant's "questionable driving behavior," "there was no actual smell of alcohol or any other signs of impairment." However, because the accident resulted in a serious injury, Greear read defendant the statutory "Warning to Motorist" and asked him to provide a sample of his urine and blood for testing. Defendant consented and a nurse collected the samples. The only positive test result was for benzoylecgonine, a metabolite of cocaine, which was found in both defendant's blood and urine. A metabolite is a byproduct remaining in the body after metabolism has taken place.

¶ 9        On October 21, 2010, the trial court entered guilty findings in both traffic cases (Champaign County case Nos. 10-TR-19799, 10-TR-19800), apparently following a bench trial. (However, the record is not clear on how those cases were resolved, *i.e.*, by plea or bench trial.)

¶ 10       Piat remained in the hospital for 45 days following the accident before dying on November 1, 2010. According to Doctor Nicole Howell, the pathologist who performed the autopsy, Piat died from respiratory failure caused by the brain injury he sustained in the accident.

¶ 11       On June 3, 2011, the State charged defendant with aggravated driving with a drug, substance, or compound in his breath, blood, or urine (625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2010) (the aggravating factor being Piat's death)). The State alleged defendant "drove or was in physical control of a motor vehicle at a time when there [was] any amount of a drug, substance, or compound in [his] breath, blood, or urine resulting from the unlawful use or consumption of a controlled substance listed in the Illinois Controlled Substances Act, and was involved in a motor vehicle accident that resulted in the death of Eddie Piat and the violation was a proximate cause of the death."

¶ 12       Prior to trial, defendant filed a number of motions to dismiss, all of which the trial court denied. Defendant sought appellate review of those denials through an interlocutory appeal to this court. However, on March 8, 2013, we dismissed that interlocutory appeal for lack of appellate jurisdiction because defendant failed to file a timely notice of appeal. *People v. Hasselbring*, 2013 IL App (4th) 120636-U. The matter then proceeded to trial in September 2013.

¶ 13       During trial, the State's expert, Tara Kerns, testified, "Benzoylecgonine is a cocaine metabolite. That means that at some point cocaine was ingested. It breaks down into metabolites. One of them is Benzoylecgonine, which we test for. It is similar to digestion. When you ingest food, it has to break down into other substances. Drugs are the same way." When asked what the presence of benzoylecgonine in defendant's blood and urine indicated,

Kerns responded, "It just told me that cocaine was ingested within the last 24 to 28 hours." Kerns testified cocaine is a Schedule II controlled substance. On cross-examination, the following colloquy took place:

"Q. [DEFENSE COUNSEL:] You found no cocaine in either the blood or urine of [defendant,] is that correct?

A. Correct.

Q. The only thing you found was Benzoylecgonine, which is a metabolite; correct?

A. Correct.

Q. It's not a controlled substance; is it?

A. I'm not sure about that.

Q. You don't know if–

A. Benzoylecgonine is not listed as a controlled substance, but–

Q. Yeah, Okay. So–

A. –it can only come from cocaine.

Q. So it's not listed as [a] controlled substance in the very statute we're dealing with; correct?

A. Correct.

* * *

Q. Let's see if I understand this. You indicated that Benzoylecgonine is not a drug listed as a controlled substance, correct?

A. Correct.

Q. And cocaine is; correct?

A. Yes.

Q. And you didn't find any cocaine?

A. No, I did not."

¶ 14 Defendant did not present any testimony. Instead, defendant requested the trial court take notice of a number exhibits and statutes, which the court did. Defendant's theory of the case was the evidence was insufficient to convict him of aggravated driving with a drug, substance, or compound in his breath, blood, or urine where he did not have a controlled substance in his body at the time of the accident. Defendant argued benzoylecgonine resulted from the metabolic process and not from the ingestion of cocaine.

¶ 15 During the jury instruction conference, defendant tendered a nonpattern instruction, No. 5, which stated: "The metabolite Benzoylecgonine is not a drug, substance, or controlled substance listed in the Illinois Controlled Substances Act." The following colloquy then took place regarding that instruction:

"[DEFENSE COUNSEL]: It, it simply instructs the jury as to what, in fact, the law is with respect to Benzoylecgonine. I think that the evidence–and I've asked you and you've already taken judicial notice of the statute, Benzoylecgonine is not included as a controlled substance so, therefore I, think it would aid the jury in, in interpreting this case and in, instructing them properly with respect to the law.

THE COURT: Okay. Ruling on five is five is refused. One, I don't think it's an issue before the jury but, two, I believe it's an inaccurate statement of the law.

- 4 -

Okay. Five is refused."

¶ 16 Approximately 40 minutes into its deliberations, the jury sent a question to the trial court, asking "does the cocaine metabolite qualify as a substance as stated in proposition number two?" The second proposition of People's instruction No. 12 (Illinois Pattern Jury Instructions, Criminal, No. 23.64A (4th ed. Supp. 2011) (hereinafter, IPI Criminal 4th No. 23.64A (Supp. 2011))) stated the following: "That at the time the defendant drove a motor vehicle, there was any amount of a drug, substance, or intoxicating compound in his breath, blood[,] or urine resulting from the unlawful use or consumption of cocaine, a controlled substance ***."

¶ 17 The State suggested the "court direct the jury that they've heard testimony concerning the cocaine metabolite and that [the] testimony is what they have to rely on to determine the answer to the question." Defendant agreed with the State's position, stating the following: "obviously, based on my earlier positions, I would ask that you answer the question no. [However,] I'm realistic. *** I agree with counsel, something to the effect that *** you need to look at the jury instructions, consider the evidence that was presented, something to that effect." The trial court, however, disagreed with the parties' recommendations and the following colloquy took place:

"THE COURT: Okay. I'm going to deny the request for the suggested no from the defendant and also I'm not accepting–at least I don't think I'm accepting the suggested response from the [S]tate because this really asks for a–for clear legal direction from the court. It's not really a factual question or one about review of the evidence. It's really a matter asking the court to give a legal definition and so the court should answer that as closely as possible by giving a direct answer and then explaining without alluding to facts in the answer, so the answer the court is going to give is, [']yes, cocaine metabolite qualifies as a drug, substance[,] or intoxicating compound within the meaning of proposition two.['] I believe that responds to their question and correctly states the law to them, so that's the response that's going to be given. I'm going to write that out carefully.

[DEFENSE COUNSEL]: Well, show my–show my objection, Judge. You might as well just convict him right now yourself because that's what you're doing. I mean, the whole issue here is the [S]tate never offered any direction as to this. They didn't even ask now for you to do this. You know, you're just giving him a, a conviction. That's what you're doing. And I think you realize that. But, I mean, Judge, this is–why did we go through all of this? I mean, you know, the whole issue was that the jury had to decide whether this was or was not a substance that would be considered. For you to preempt the jury, to take that from them basically by telling them, by instructing them, well, then it's over.

THE COURT: And the written response of the court provides cocaine metabolite qualifies as a drug, substance[,] or intoxicating compound within the meaning of proposition two. And I've put my name to it. And I'm going to ask the court officer to deliver that.

And then anything else before we recess [(addressing the assistant State's Attorneys)]?

[ASSISTANT STATE'S ATTORNEY]: No, thank you.

THE COURT: Anything else [(addressing defendant's counsel)]?

[DEFENDANT'S COUNSEL]: I'm, I'm going to move for a mistrial with that ruling. I think that you've taken away his right to a jury trial.

THE COURT: Okay. Further argument?

[DEFENDANT'S COUNSEL]: No.

THE COURT: Okay. Motion is denied."

¶ 18    Approximately 30 minutes later, the jury returned a guilty verdict. The jury verdict form (People's instruction No. 15 (see Illinois Pattern Jury Instructions, Criminal, No. 15 (4th ed. 2000))) stated "We, the jury, find [defendant] guilty of Aggravated Driving with a Drug, Substance[,] or Intoxicating Compound in [his] Breath, Blood[,] or Urine."

¶ 19    On October 25, 2013, defendant filed a motion for a new trial, arguing the trial court erred in (1) denying his pretrial motions, (2) denying his motions during trial, (3) allowing certain jury instructions offered by the State, (4) denying all of his jury instructions, (5) the way it answered the jury's question during deliberations, and (6) denying his motion for a directed verdict.

¶ 20    Following a November 8, 2013, hearing, the trial court denied defendant's motion. Thereafter, the court sentenced defendant to 11 years' imprisonment.

¶ 21    On December 3, 2013, defendant filed a motion to reduce sentence, arguing the trial court abused its discretion by improperly considering facts not in evidence, failing to follow mitigation guidelines, and imposing an excessive sentence.

¶ 22    Following a December 19, 2013, hearing, the trial court denied defendant's motion.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant argues the following: (1) his prosecution was barred by the compulsory joinder provisions of sections 3-3(b) and 3-4(b)(1) of the Code (720 ILCS 5/3-3(b), 3-4(b)(1) (West 2010)); (2) the test results of his blood and urine samples should have been suppressed where no probable cause existed to justify the warrantless search; (3) the trial court erred in permitting testimony from the State's expert which was not properly disclosed and for which she was not properly qualified; (4) the court erred in refusing defendant's tendered jury instructions; (5) the court erred in the manner it answered the jury's question during deliberations; (6) the evidence was insufficient to convict him where he did not have a controlled substance in his body at the time of the accident; and (7) he received an excessive sentence.

¶ 26                              A. Compulsory Joinder

¶ 27    We first consider whether defendant could properly have been prosecuted for aggravated driving under the influence. Defendant argues the State's prosecution was barred because a conviction had already been obtained for failing to reduce speed to avoid an accident and both offenses were based on the same set of facts.

¶ 28    At issue is the proper application of the compulsory joinder provisions found in sections 3-3 and 3-4 of the Code (720 ILCS 5/3-3, 3-4 (West 2010)). Section 3-4(b)(1) provides the following:

"(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if that former prosecution:

(1) resulted in either a conviction or an acquittal, and the subsequent prosecution is for an offense of which the defendant could have been convicted on the former prosecution; or was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3-3 of this Code (unless the court ordered a separate trial of that charge); or was for an offense that involves the same conduct, unless each prosecution requires proof of a fact not required on the other prosecution, or the offense was not consummated when the former trial began[.]" 720 ILCS 5/3-4(b)(1) (West 2010).

Section 3-3, in turn, provides:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." 720 ILCS 5/3-3 (West 2010).

¶ 29    In sum, section 3-3(b) applies where a defendant faces multiple charges arising out of the same conduct and provides, in pertinent part, "[i]f the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution *** if they are based on the same act." 720 ILCS 5/3-3(b) (West 2010). Thus, a prosecution is ordinarily barred if (1) a prior prosecution exists; (2) the offense charged in the current prosecution was known to the proper prosecuting officer at the time of commencing the prosecution for the prior offense; and (3) both prosecutions arise from the same act.

¶ 30    However, it is well settled the compulsory joinder provisions of traffic and felony charges do not apply to offenses charged via a uniform citation by a police officer at the time of an arrest. See *People v. Kizer*, 365 Ill. App. 3d 949, 955-56, 851 N.E.2d 266, 270-71 (2006). Indeed, a long line of case law provides a defendant can be separately prosecuted on traffic citations filed by police officers, independent from felony charges arising out of the same incident filed by a State's Attorney by either an information or grand jury indictment. *People v. Jackson*, 118 Ill. 2d 179, 192, 514 N.E.2d 983, 988-89 (1987), *overruled on other grounds*, *People v. Stefan*, 146 Ill. 2d 324, 586 N.E.2d 1239 (1992); *People v. Kazenko*, 2012 IL App (3d) 110529, 972 N.E.2d 815 (applying the *Jackson* analysis); *Kizer*, 365 Ill. App. 3d at 955-56, 851 N.E.2d at 270-71; *People v. Hogan*, 186 Ill. App. 3d 267, 269, 542 N.E.2d 178, 179 (1989); *People v. Crowe*, 195 Ill. App. 3d 212, 218, 552 N.E.2d 5, 9-10 (1990) (section 3-3 does not require the State to prosecute a felony charge in the same proceeding as a related traffic offense charged by uniform citation and complaint).

¶ 31    Although defendant appears to concede this point, recognizing in his brief section 3-3(b) "does not apply to a case in which a defendant pleads [guilty] to a traffic citation," he cites the

supreme court's opinion in *People v. Quigley*, 183 Ill. 2d 1, 16, 697 N.E.2d 735, 742 (1998), for the proposition section 3-3(b) required the State to prosecute the felony charge in the same proceeding as the misdemeanor. However, *Quigley* is easily distinguishable.

¶ 32    In the misdemeanor case in *Quigley*, the State's Attorney formally charged the defendant with driving under the influence (DUI) by filing an information. *Quigley*, 183 Ill. 2d at 4, 697 N.E.2d at 737. Thereafter, the State charged the defendant with aggravated DUI. *Quigley*, 183 Ill. 2d at 5, 697 N.E.2d at 737. In the case here, however, a police officer charged defendant with a uniform citation, *i.e.*, a traffic ticket, for his failure to reduce speed to avoid an accident. "The supreme court has held that 'the compulsory-joinder provisions of section 3-3 do *not* apply to offenses that have been charged by the use of a uniform citation and complaint form provided for traffic offenses.' " (Emphasis in original.) *Kizer*, 365 Ill. App. 3d at 955, 851 N.E.2d at 270 (quoting *Jackson*, 118 Ill. 2d at 192, 514 N.E.2d at 988-89). As a result, defendant's argument fails.

¶ 33    Moreover, Piat did not die until November 1, 2010, after the trial court entered its guilty findings on the uniform citations in October. Thus, the aggravated-driving-under-the-influence offense under section 11-501(d)(1)(F) could not have been charged at the time the uniform citations were issued.

¶ 34                                B. Motion To Suppress

¶ 35    Defendant argues the trial court erred in denying his motion to suppress the test results of his blood and urine samples because Officer Greear had no probable cause to justify the request.

¶ 36    Section 11-501.6(a) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.6(a) (West 2010)) provides any person who drives or is in actual control of a motor vehicle upon the public highways and who has been involved in an accident resulting in personal injury or death for which he has been arrested, as evidenced by the issuance of a traffic ticket, shall be deemed to have given consent for a blood-alcohol test. For purposes of this section, a personal injury includes:

> "any type A injury as indicated on the traffic accident report completed by a law enforcement officer that requires immediate professional attention in either a doctor's office or a medical facility. A type A injury shall include severely bleeding wounds, distorted extremities, and injuries that require the injured party to be carried from the scene." 625 ILCS 5/11-501.6(g) (West 2010).

¶ 37    The supreme court has held type-A injuries are limited to severely bleeding wounds, distorted extremities, or injuries that require the injured party to be carried from the scene. *Fink v. Ryan*, 174 Ill. 2d 302, 310, 673 N.E.2d 281, 286 (1996). In *Fink*, the supreme court held section 11-501.6 of the Vehicle Code is constitutional because it was narrowly drawn to apply only to drivers involved in more serious accidents. *Fink*, 174 Ill. 2d at 311, 673 N.E.2d at 286.

¶ 38    In this case, defendant does not dispute Piat was injured to such an extent as to satisfy the section 11-501.6(g) type-A injury requirement. Indeed, the record reflects Piat was taken from the scene in an ambulance and admitted to the hospital in critical condition, where he remained for 45 days until his death. Clearly, Piat's injuries are of the type contemplated by the Vehicle Code and the supreme court.

¶ 39    Defendant next argues section 11-501.6 of the Vehicle Code is facially unconstitutional in light of the United States Supreme Court's decision in *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). We disagree.

¶ 40    Whether a statute is constitutional is a question of law to be reviewed *de novo*. *People v. Sharpe*, 216 Ill. 2d 481, 486-87, 839 N.E.2d 492, 497 (2005). Statutes are presumed constitutional, and we have a duty to construe a statute in a manner that upholds its validity and constitutionality if it can be reasonably done. *People v. Aguilar*, 2013 IL 112116, ¶ 15, 2 N.E.3d 321. The party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 15, 2 N.E.3d 321. As stated by the supreme court:

    "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount. [Citations.] A statute is facially unconstitutional only if there are no circumstances in which the statute could be validly applied. [Citations.] The fact that the statute could be found unconstitutional under some set of circumstances does not establish the facial invalidity of the statute. [Citation.] Thus, a facial challenge must fail if any situation exists where the statute could be validly applied." *People v. Davis*, 2014 IL 115595, ¶ 25, 6 N.E.3d 709.

¶ 41    In *McNeely*, the Supreme Court considered "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1556. The Court found a *per se* exigency did not exist with regard to nonconsensual blood tests. Instead, the Court held each case had to be judged on its own particular set of facts. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1561. We note *McNeely* did not reverse the Court's decision in *Schmerber v. California*, 384 U.S. 757 (1966), which stands for the proposition a warrantless nonconsensual blood draw can be performed in certain situations depending on the totality of the circumstances in a particular case. *Schmerber*, 384 U.S. at 770-72. In fact, the Court in *McNeely* noted the following:

    "In short, while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1563.

¶ 42    As such, we disagree with defendant's argument *McNeely* "calls into question 'implied consent' laws throughout the nation and has effectively overturned those that require no probable cause of impairment to administer chemical testing such as 625 ILCS 11-501.6." Moreover, as stated, a statute is only facially unconstitutional if it can never be constitutionally applied. See *Davis*, 2014 IL 115595, ¶ 25, 6 N.E.3d 709. Section 11-501.6 does not create a *per se* exception to the fourth amendment's warrant requirement. An individual in defendant's position can withdraw his consent and refuse the officer's *request* to provide a blood sample. In this case, defendant chose to consent to provide a blood sample at the officer's request. "A well-settled, specific exception to the fourth amendment's warrant requirement is a search conducted pursuant to consent." *People v. Pitman*, 211 Ill. 2d 502, 523, 813 N.E.2d 93, 107 (2004) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

¶ 43    In sum, because (1) a type-A injury occurred, (2) section 11-501.6 of the Vehicle Code is not facially unconstitutional, and (3) defendant voluntarily consented to the blood draw, the

trial court did not abuse its discretion in denying defendant's motion to suppress the test results of his blood and urine samples.

¶ 44                                    C. Jury Question During Deliberations

¶ 45     Defendant argues the trial court erred in the manner it answered the jury's question during its deliberations. Defendant contends the court's answer took the case from the jury and improperly directed a verdict in the State's favor.

¶ 46     "Determining the propriety of the trial court's response to a jury question accordingly requires a two-step analysis. First, we must determine whether the trial court should have answered the jury's question. We review the trial court's decision on this point for abuse of discretion. [Citation.] Second, we must determine whether the trial court's response to the question was correct. Because this is a question of law, we review this issue *de novo*. [Citation.]" *People v. Leach*, 2011 IL App (1st) 090339, ¶ 16, 952 N.E.2d 647.

¶ 47     A judge has a duty to answer the jury's question if clarification is requested, the original instructions are incomplete, the jurors are confused, or the question concerns a point of law arising from the facts over which doubt or confusion exists. *People v. Reid*, 136 Ill. 2d 27, 39, 554 N.E.2d 174, 179 (1990). However, in providing an explanation to a jury, a trial court may not misstate the law or infringe on the province of the jury. *People v. Banks*, 281 Ill. App. 3d 417, 421-22, 667 N.E.2d 118, 121 (1996). Further, "a judge should not answer a question from a jury that calls for the judge to make a conclusion on the issues at trial." *People v. Boose*, 256 Ill. App. 3d 598, 604, 627 N.E.2d 1276, 1280 (1994). "A circuit court may also refuse to answer an inquiry by a jury if an answer or explanation by the court would cause the court to express an opinion which would probably direct a verdict one way or the other." *Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179-80 (citing *People v. Charles*, 46 Ill. App. 3d 485, 489, 360 N.E.2d 1214, 1216-17 (1977)).

¶ 48     In this case, the ultimate issue was whether defendant had any amount of a drug, substance, or compound in his blood or urine resulting from the unlawful use of cocaine. The State's expert testified benzoylecgonine is not a drug listed as a controlled substance. Moreover, the State did not argue or present evidence demonstrating benzoylecgonine is a compound. We note the jury's question asked only whether benzoylecgonine qualified as a *substance*. Both the State and defendant agreed the trial court should answer the question by telling the jury to rely on the evidence it heard during the trial. The trial court's unprompted response, "yes, cocaine metabolite qualifies as a *drug*, substance, or *intoxicating compound*," was incorrect, in conflict with the evidence presented, and served to direct a verdict in the State's favor.

¶ 49     At best, the response could have confused the jury, whose question only asked whether benzoylecgonine was a "substance." Defendant's suggestion on appeal the jury had already decided benzoylecgonine was not a drug or compound is not unreasonable based on its question. At worst, the court's response removed from the jury the question of whether defendant had a drug, substance, or compound in his system resulting from the consumption of cocaine. See *Banks*, 281 Ill. App. 3d at 422, 667 N.E.2d at 121. Moreover, doing so resolved the ultimate issue for the jury. The better approach would have been for the trial court to accept the parties' recommended response and instruct the jury to rely on the evidence it heard during the trial. Accordingly, we have no choice but to reverse defendant's conviction and remand for a new trial.

¶ 50                          D. Sufficiency of the Evidence and Double Jeopardy

¶ 51        Because we are remanding this cause for a new trial, we must consider for double jeopardy purposes whether the evidence was sufficient to sustain the defendant's conviction. *People v. Jiles*, 364 Ill. App. 3d 320, 330-31, 845 N.E.2d 944, 953 (2006). Double jeopardy does not allow for a second trial for the purpose of affording the State a second opportunity to supply evidence absent in the first proceeding. *Jiles*, 364 Ill. App. 3d at 331, 845 N.E.2d at 953. However, it does not preclude retrial if the evidence was sufficient to convict but the conviction is overturned because of an error in the trial process. *Jiles*, 364 Ill. App. 3d at 331, 845 N.E.2d at 953-54 (citing *People v. Olivera*, 164 Ill. 2d 382, 393, 647 N.E.2d 926, 931 (1995)).

¶ 52        Although not captioning his argument as such, defendant raises a sufficiency-of-the-evidence challenge on appeal, arguing benzoylecgonine does not constitute a controlled substance. In reviewing the sufficiency of the evidence to sustain a conviction, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Thomas*, 178 Ill. 2d 215, 232, 687 N.E.2d 892, 899 (1997) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 53        Section 11-501(a)(6) of the Vehicle Code prohibits the operation of a vehicle with "any amount of a drug, *substance*, or compound in the person's breath, blood, or urine *resulting from the unlawful use or consumption of *** a controlled substance* listed in the Illinois Controlled Substances Act, [or] an intoxicating compound listed in the Use of Intoxicating Compounds Act." (Emphases added.) 625 ILCS 5/11-501(a)(6) (West 2010). "Because possession of a controlled substance is unlawful *per se* (see 720 ILCS 570/402 (West 2008)), the State must establish simply that the defendant used or consumed a controlled substance before driving." *People v. Martin*, 2011 IL 109102, ¶ 16, 955 N.E.2d 1058. We note impairment is irrelevant under section 11-501(a)(6). See *Martin*, 2011 IL 109102, ¶ 26, 955 N.E.2d 1058 (violation of section 11-501(a)(6) is a strict-liability violation rather than a violation requiring proof of impairment). To satisfy its burden in this case, the State was required to prove beyond a reasonable doubt the presence of any amount of a drug, substance, or compound in defendant's blood or urine *resulting from* his unlawful use of cocaine.

¶ 54        It is undisputed the cocaine metabolite benzoylecgonine was found in defendant's blood and urine. The State's expert testified benzoylecgonine only comes from cocaine. Thus, the critical question is whether the State proved benzoylecgonine qualifies as either a drug, substance, or intoxicating compound (see IPI Criminal 4th No. 23.64A (Supp. 2011)). As stated, the State's expert testified benzoylecgonine is not a drug listed as a controlled substance. Likewise, no evidence was presented to show benzoylecgonine was an intoxicating compound or a compound resulting from consumption of an intoxicating compound. Indeed, section 1 of the Use of Intoxicating Compounds Act (720 ILCS 690/1 (West 2012)) specifically lists the qualifying intoxicating compounds to the exclusion of benzoylecgonine.

¶ 55        The only remaining issue, based on the evidence presented, is whether benzoylecgonine could be considered a substance. While used throughout the statute, the term "substance" is not defined. In the absence of a definition, an unambiguous term must be given its plain and ordinary meaning. "Substance" is defined as, *inter alia*, "matter of particular or definite chemical constitution." Merriam-Webster Online Dictionary, http://www. merriam-webster.

com/dictionary/substance (last visited Sept. 15, 2014). Benzoylecgonine can be seen to fit within this definition. The State's expert testified, "Benzoylecgonine is a cocaine metabolite. That means that at some point cocaine was ingested. It breaks down into metabolites. One of them is Benzoylecgonine, which we test for. It is similar to digestion. When you ingest food, it has to break down into other *substances*. Drugs are the same way." (Emphasis added.) Looking at the evidence in a light most favorable to the prosecution, as we must, we find a rational jury *could* have found the benzoylecgonine in defendant's system was a substance resulting from defendant's use of cocaine before driving. See *Martin*, 2011 IL 109102, ¶ 18, 955 N.E.2d 1058. Accordingly, double jeopardy does not preclude retrial of defendant.

¶ 56                                    III. CONCLUSION

¶ 57        For the reasons stated, we reverse defendant's conviction and remand for a new trial. Because we conclude the evidence was sufficient to convict defendant, no double jeopardy impediment to retrial is present. See *People v. Ward*, 2011 IL 108690, ¶ 50, 952 N.E.2d 601.

¶ 58        Reversed and remanded.