2025 IL App (4th) 240227-U

NOS. 4-24-0227, 4-24-0228, 4-24-0229, 4-24-0230, 4-24-0231 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| RONALD P. BOMBLISS, | ) | Nos. 21CM70 |
| Defendant-Appellant. | ) | 21TR1337 |
| | ) | 21TR1338 |
| | ) | 21TR1339 |
| | ) | 23TR1784 |
| | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We grant the Office of the State Appellate Defender's motion to withdraw as
appellate counsel and affirm the trial court's finding of unfitness.

¶ 2    Defendant, Ronald P. Bombliss, appeals the trial court's order finding him unfit to

stand trial. This court appointed the Office of the State Appellate Defender (OSAD) to represent

defendant. OSAD moves to withdraw as counsel, arguing defendant's appeal presents no

potentially meritorious issues for review. We grant the motion and affirm the finding of unfitness.

¶ 3                                I. BACKGROUND

¶ 4    In the five cases subject to this appeal, defendant was charged with the following

offenses: (1) retail theft (720 ILCS 5/16-25(a)(1) (West 2020)), (2) resisting or obstructing a peace

officer (*id.* § 31-1(a)), (3) two counts of fleeing or attempting to elude a peace officer (625 ILCS 5/11-204(a) (West 2020)), (4) failing to stop when exiting a private drive (*id.* § 11-1205), (5) driving with only one red taillight (*id.* § 12-201(b)), (6) not having a valid registration (625 ILCS 5/3-701 (West 2022)), and (7) driving without insurance (*id.* § 5/3-707).

¶ 5        During the subsequent proceedings, defendant repeatedly asked to proceed *pro se* with standby counsel. After properly admonishing defendant under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the trial court granted defendant's motion to proceed *pro se* but refused to appoint standby counsel.

¶ 6        Thereafter, the trial court found there was a *bona fide* doubt of defendant's fitness to stand trial and ordered defendant to undergo a fitness evaluation. The court came to this conclusion because, among other things, defendant continually interrupted others at the proceedings, believed everyone involved in the court system was incompetent and working for the State, asserted he has been a political prisoner for 30 years, believed he might be killed for exposing corruption in the court system, and claimed the charges against him were instituted in retaliation for "N1 vice terrorism."

¶ 7        Dr. Chad Brownfield, the clinical forensic psychologist who evaluated defendant's fitness to stand trial, examined defendant and concluded he was not fit. Defendant asked the trial court for another evaluation by a different psychologist. The court denied his request, noting "[the evaluation] was done by an independent psychiatric expert." Defendant then asked to proceed *pro se* at the fitness hearing, the court denied that request, and it appointed counsel to represent him. Defendant also asked to have a jury decide his fitness. The court granted that request.

¶ 8        Before the fitness hearing began, the parties agreed that Dr. Brownfield could sit in during all the proceedings to gather additional information about defendant's fitness. During

*voir dire*, defendant interrupted, saying he wanted a juror excused because the juror was a "cop" who "brutalized [him]."

¶ 9 After the jury was impaneled, the parties gave their opening statements. In defense counsel's cursory statement, he asked the jury simply "to listen carefully and listen closely to what [the] witnesses have to say and to judge them appropriately."

¶ 10 Dr. Brownfield testified, based on a reasonable degree of scientific certainty, defendant was not fit to stand trial, but he could attain fitness within one year if he underwent treatment. Dr. Brownfield primarily based his assessment on defendant's inability to regulate his emotions. Dr. Brownfield explained that, during the evaluation, defendant had outbursts, provided rambling responses, broke a pen on a table, drew on the table, stared at him, and made "an obscene gesture by grabbing his crotch." Dr. Brownfield testified defendant was easily angered, irritable, and righteously indignant. Instead of providing details of the charged offenses when asked, defendant "[u]sed pretty colorful profane language," contested aspects of the charges, claimed evidence was planted in his car, and made comments about "fabricated convictions." This required Dr. Brownfield to frequently redirect defendant.

¶ 11 Dr. Brownfield also testified defendant could identify the charges brought against him, but he did not know the difference between a felony and a misdemeanor or understand the possible penalties. Defendant knew what purpose defense counsel served, but "[h]e used a lot of colorful language" in providing details. Defendant did not understand the role the prosecutor served, again using "pretty colorful language" and "profanity" in describing what a prosecutor did. Defendant could not explain the role of the judge or the jury, and although he knew there were juries of 6 or 12, he referred to the jury as "puppets." There were also some legal concepts defendant did not understand. Given what he observed, Dr. Brownfield believed defendant would

have a difficult time assisting in his own defense.

¶ 12    When defendant testified, he interrupted his attorney at times, gave rambling answers to pointed questions, and asserted he was competent to stand trial. He stated any *bona fide* doubt about his fitness to stand trial was initiated because he had asked for standby counsel. Defendant testified the difference between a felony and a misdemeanor is "[t]ime in jail," the judge is supposed to serve as a "fair arbitrator" of the law and facts in a bench trial, defense counsel is "supposed to defend [him]," his defense counsel was not defending him, and prosecutors are servants of the State. Defendant asserted prosecutors are "not supposed to prosecute vindictively, as in [his] case," but, rather, "[t]hey're suppose[d] to treat everyone fairly and equally." Defendant claimed "this government is out of control" and Dr. Brownfield is a "judicial whore psyche." Defendant also testified about an incident far in the past where the sheriff allegedly gave defendant's neighbor permission to shoot defendant's dog.

¶ 13    After defendant testified, Dr. Brownfield was recalled. He stated that, even though defendant was able to identify and explain things about the trial process in court, which he was unable to do during the evaluation, he still believed defendant was unfit and not presently able to assist in his defense.

¶ 14    The parties proceeded with closing arguments. Defendant interrupted his attorney's closing statement, calling counsel a "[p]ublic pretender" when counsel asked the jury to find defendant unfit and stating, "F*** him," when counsel referred to Dr. Brownfield.

¶ 15    The trial court then instructed the jury. One of the instructions provided the jurors "[were] not to concern [themselves] with possible punishment or sentence for the offense charged during your deliberations, because this is not a trial on the charge."

¶ 16    During jury deliberations, the jury asked (1) "if found unfit and given one year of

treatment, is that court ordered?" and (2) "if found unfit, what is the next thing for the defendant?" After discussing it with the attorneys, the trial court likened the fitness hearing to a criminal trial, where jurors are instructed not to concern themselves with what happens to a defendant after he is found guilty, and instructed the jury "you're not to concern yourselves with what happens after you have reached a verdict." The jury found defendant unfit to stand trial and determined there was a substantial probability he would attain fitness in one year with treatment.

¶ 17 This timely interlocutory appeal followed.

¶ 18                                  II. ANALYSIS

¶ 19 On appeal, OSAD moves to withdraw. Counsel for OSAD asserts she (1) read the record on appeal, (2) reviewed the facts and applicable law, and (3) discussed the case with another attorney. OSAD concludes an appeal in this case would be without arguable merit. This court advised defendant he had until July 12, 2024, to respond. We granted defendant's request for an extension of time, and his response was due by September 26, 2024. Defendant did not file a response.

¶ 20 OSAD submits it would be frivolous to argue (1) the finding of unfitness was against the manifest weight of the evidence; (2) the trial court abused its discretion in refusing to appoint, per defendant's request, a second psychologist to evaluate defendant's fitness; (3) defendant should have been allowed to represent himself at the fitness hearing; (4) defense counsel was ineffective for failing to adopt defendant's position that he was fit to stand trial; (5) Dr. Brownfield should not have been allowed to remain in the courtroom during all the proceedings; and (6) the court's response to the jury's questions was improper. We agree this appeal presents no nonfrivolous issues.

¶ 21 First, we consider whether the jury's finding of unfitness was proper. A defendant's

fitness to plead, stand trial, or be sentenced is presumed, and a defendant will be deemed unfit only if "because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him *or to assist in his defense*." (Emphasis added.) 725 ILCS 5/104-10 (West 2022). A defendant may be fit to stand trial despite an otherwise unsound mind because "[f]itness speaks only to a person's ability to function within the context of a trial." *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). "When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." 725 ILCS 5/104-11(a) (West 2022).

¶ 22        On appeal, we consider whether the finding of unfitness was against the manifest weight of the evidence. *People v. Stahl*, 2014 IL 115804, ¶ 40. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. DeLeon*, 227 Ill. 2d 322, 332 (2008).

¶ 23        Here, the jury's finding of unfitness was not against the manifest weight of the evidence. Although defendant was able to explain in court certain aspects of the trial process, he was unable to explain concepts to Dr. Brownfield during the evaluation. As Dr. Brownfield testified, defendant failed to remain on topic during his evaluation, requiring frequent redirection. The jury could also see during the proceedings that defendant regularly interrupted and failed to remain on topic. It was apparent, and consistent with Dr. Brownfield's determination, defendant would not be able to assist in his defense. See 725 ILCS 5/104-10 (West 2022).

¶ 24        Second, we address whether the trial court properly refused to appoint a second psychologist to evaluate defendant's fitness when defendant asked for it. Resolving this issue requires us, first, to interpret section 104-13(e) of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/104-13(e) (West 2022)), which addresses additional fitness evaluations. Section 104-13(e) states, in relevant part:

> "Upon request by the defense and if the defendant is indigent, the court *may* appoint, in addition to the expert or experts chosen pursuant to subsection (a) of this Section, a qualified expert selected by the defendant to examine him and to make a report as provided in Section 104-15." (Emphasis added.) *Id.*

¶ 25      In construing section 104-13(e) of the Code, we are guided by the well-settled rules of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Gatlin*, 2024 IL App (4th) 231199, ¶ 19. The best indicator of legislative intent is the plain language of the statute. *Id.* We must give the statute's language its plain and ordinary meaning and cannot read limitations or conditions into the statute when none are expressed. *People v. Green*, 2024 IL App (2d) 220328, ¶ 17. Where the statute's language is unambiguous, it must be given effect without resort to other aids of construction. See *id.* Construing a statute presents a question of law we review *de novo*. *Id.* ¶ 16.

¶ 26      With these principles in mind, we turn to examining section 104-13(e) of the Code. It provides the court "may" appoint an additional expert to evaluate a defendant's fitness to stand trial. 725 ILCS 5/104-13(e) (West 2022). "[T]he word 'may' ordinarily connotes discretion," not a requirement. *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006). Thus, whether to appoint an additional expert to evaluate a defendant's fitness to stand trial is left to the sound discretion of the trial court. See *id.* A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would adopt the trial court's position. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 13.

¶ 27      Having found section 104-13(e) of the Code gives the court discretion to order a

second evaluation, we next address whether the trial court here abused that discretion when it did not order a second evaluation. We cannot conclude the court abused its discretion. The first and only evaluation was done by Dr. Brownfield, an independent expert, and nothing in the record suggests his evaluation was conducted improperly or that the circumstances warranted a second evaluation.

¶ 28     Third, we consider whether defendant should have been allowed to proceed *pro se* at his fitness hearing. This is an issue of law we review *de novo*. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 46.

¶ 29     Once a court determines there is a *bona fide* doubt about a defendant's fitness to stand trial, it cannot allow the defendant to proceed *pro se* until "the shadow of [the] defendant's questioned ability to understand the nature of the charges against him *and his ability to cooperate in his own defense* [are] removed." (Emphasis added.) *People v. Rath*, 121 Ill. App. 3d 548, 551 (1984). Until that time, the defendant must be represented by competent counsel, even if appointing counsel to represent him is against his will. *Id.* This is so "[b]ecause a proper waiver of counsel requires the defendant to have use of his mental faculties." *People v. Mazar*, 282 Ill. App. 3d 662, 664 (1996).

¶ 30     Here, the court determined there was a *bona fide* doubt about defendant's fitness to stand trial. Thus, refusing to allow defendant to proceed *pro se* was not error.

¶ 31     Fourth, we address whether defense counsel was ineffective for failing to adopt defendant's position he was fit to stand trial. "A claim alleging ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 91. "Under *Strickland*, a defendant must prove both (1) deficient performance by counsel and (2) prejudice to the defendant." *Id.* "To satisfy the first

- 8 -

prong, a defendant must demonstrate counsel's performance was objectively unreasonable under prevailing norms." *Id.* "To satisfy the second prong, prejudice is demonstrated if there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome of the proceeding.' " *Id.* (quoting *People v. Colon*, 225 Ill. 2d 125, 135 (2007)). "The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.* In this case, we review *de novo* whether counsel was ineffective. *People v. Berrier*, 362 Ill. App. 3d 1153, 1167 (2006) (noting when facts surrounding a claim of ineffective assistance of counsel are not in dispute, the *de novo* standard of review applies).

¶ 32        Here, we conclude counsel was not ineffective. First, counsel did not act unreasonably in failing to adopt defendant's position that he was fit to stand trial. Indeed, counsel would have been deficient had he done so. See *People v. Holt*, 2014 IL 116989, ¶ 56 ("Where *** the evidence clearly indicates that [the] defendant is unfit to stand trial, but [the] defendant contends that he or she is fit, defense counsel is not obligated to adopt the defendant's position and argue for a finding of fitness. In fact, in doing so, defense counsel would be violating his duty to the client and suborning a violation of due process."). Moreover, given what transpired at the fitness hearing, we cannot conclude defendant was prejudiced when counsel did not adopt his position that he was fit. That is, we cannot conclude there is a reasonable probability the jury would have found defendant fit had counsel accepted defendant's stance on that point, given Dr. Brownfield's testimony about defendant's inability to assist in his defense and defendant's outbursts and ramblings during the hearing.

¶ 33        Fifth, we consider whether Dr. Brownfield should have been allowed to remain in

the courtroom during all the proceedings. "It is within the trial court's discretion to permit a material witness to remain in the courtroom to assist the State's Attorney." *People v. Leemon*, 66 Ill. 2d 170, 174 (1977). "Absent a showing of prejudice by the defendant, no abuse of discretion will be found in allowing a material witness to remain in the courtroom." *People v. Jones*, 108 Ill. App. 3d 880, 886 (1982).

¶ 34 Here, putting aside the fact the parties agreed to Dr. Brownfield's presence during all the proceedings, we cannot conclude defendant was prejudiced. If anything, defendant was helped by Dr. Brownfield's presence because the doctor heard defendant explain in court aspects of the trial process he could not explain during the evaluation, and this arguably weighed in favor of defendant's fitness to stand trial. See 725 ILCS 5/104-16(b)(1) (West 2022). When the doctor was recalled, he acknowledged defendant's improved understanding. However, Dr. Brownfield's opinion defendant was unfit would not have changed, and his observations of defendant in court supported his conclusion defendant was unfit to stand trial. Dr. Brownfield concluded in his evaluation, as he did in court, defendant was unfit because he was unable to regulate his emotions and, thus, assist in his defense, as evidenced by his outbursts, rambling responses, and easily angered, irritable, and righteously indignant demeanor. Under the circumstances, appellate counsel would not be able to advance a nonfrivolous claim that defendant sustained prejudice from Dr. Brownfield remaining in the courtroom.

¶ 35 Last, we address whether the trial court's response to the jury's questions was proper. "A [trial court] has a duty to answer the jury's question if clarification is requested, the original instructions are incomplete, the jurors are confused, or the question concerns a point of law arising from the facts over which doubt or confusion exists." *People v. Hasselbring*, 2014 IL App (4th) 131128, ¶ 47. In doing so, the court cannot infringe on the jury's duties, express an

opinion that would direct a verdict for either party, or make a conclusion on an issue presented at trial. *Id.*

¶ 36    "Nevertheless, under the appropriate circumstances, a [trial] court 'may exercise its discretion to refrain from answering a jury's inquiries.' " *People v. Reid*, 136 Ill. 2d 27, 39 (1990) (quoting *People v. Gathings*, 99 Ill. App. 3d 1135, 1138 (1981)). For example, "[a trial] court may decline to answer a jury's question if the jury instructions are 'readily understandable and sufficiently explain the relevant law' [citation] [or] 'further instructions would serve no useful purpose.' " *Id.*

¶ 37    We employ a bifurcated standard of review when considering a trial court's response to a jury's question. *Hasselbring*, 2014 IL App (4th) 131128, ¶ 46.

> "First, we must determine whether the trial court should have answered the jury's question. We review the trial court's decision on this point for abuse of discretion. [Citation.] Second, we must determine whether the trial court's response to the question was correct. Because this is a question of law, we review this issue *de novo*." *People v. Leach*, 2011 IL App (1st) 090339, ¶ 16.

¶ 38    Here, the jury asked (1) "if found unfit and given one year of treatment, is that court ordered?" and (2) "if found unfit, what is the next thing for the defendant?" The trial court responded, "[Y]ou're not to concern yourselves with what happens after you have reached a verdict," which we believe is tantamount to not answering the jury's questions. We determine the trial court did not abuse its discretion in refusing to answer the jury's questions because the jury was essentially instructed not to consider anything beyond the verdict. Further, the original instructions the jury received informed them that they "[were] not to concern [themselves] with possible punishment or sentence for the offense charged during your deliberations, because this is

not a trial on the charge." That instruction was understandable and explained the law sufficiently. See *Reid*, 136 Ill. 2d at 39. Likewise, and perhaps more importantly, any further instructions would not serve a useful purpose. *Id.* The court's response was correct because it did not infringe on the jury's duties, express an opinion that would direct a verdict for either party, or make a conclusion on an issue presented at trial. *Hasselbring*, 2014 IL App (4th) 131128, ¶ 47.

¶ 39        Given all the above, we agree with OSAD there is no meritorious argument to be raised on appeal. Accordingly, we grant OSAD's motion to withdraw and affirm the finding of unfitness.

¶ 40                    III. CONCLUSION

¶ 41        For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's finding of unfitness.

¶ 42        Affirmed.