# Illinois Official Reports

## Appellate Court

---

### *People v. Gaede*, 2014 IL App (4th) 130346

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER M. GAEDE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0346 |
| Filed<br>Rehearing denied | November 4, 2014<br>December 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In upholding defendant's conviction for driving under the influence, the appellate court rejected his contention that the implied-consent statute is facially unconstitutional and also unconstitutionally punishes individuals who assert their fourth-amendment right to refuse to consent to chemical analysis and held that where the record showed defendant withdrew his consent to a breath test after he was arrested, there was no warrantless, nonconsensual search and defendant failed to establish that his fourth-amendment rights were violated. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 12-DT-81; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Jacqueline L. Bullard, and James Ryan Williams (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Luke McNeill (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1    In January 2013, a jury found defendant, Christopher M. Gaede, guilty of driving under the influence (625 ILCS 5/11-501(a)(2) (West 2012)). In March 2013, the trial court sentenced defendant to 24 months' court supervision. Defendant appeals, arguing he is entitled to a new trial because the implied-consent statute (625 ILCS 5/11-501.1(a) (West 2012)) is facially unconstitutional and also unconstitutionally punishes individuals who assert their fourth-amendment (U.S. Const., amend. IV) right to refuse to consent to chemical analysis. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On February 19, 2012, defendant was arrested for driving under the influence (625 ILCS 5/11-501(a)(2) (West 2012)), operating an uninsured vehicle (625 ILCS 5/3-707 (West 2012)), failing to report an accident to police authority (625 ILCS 5/11-407 (West 2012)), and failing to give information after striking an unattended vehicle (625 ILCS 5/11-404 (West 2012)). Defendant refused to submit to a chemical breath test requested by the arresting officer.

¶ 4    A jury trial was held in January 2013. Randy Clem, a Decatur police officer, testified he received a dispatch at approximately 8 p.m. for a hit-and-run crash involving a blue, chopper-style motorcycle. He stopped defendant, who was driving a motorcycle matching the description. Defendant denied being in an accident and had a nonchalant, cavalier attitude. Officer Clem smelled the odor of alcohol on defendant's breath. Defendant also had bloodshot, glassy eyes.

¶ 5    Officer Kyle Daniels of the Decatur police department testified he was working on the evening in question and was dispatched to the parking lot behind Maustell's Pizza Inn and the Flashback Lounge because of a reported hit-and-run. A truck in the parking lot had damage to the front driver's side fender. Officer Daniels took the truck's owner to the location where defendant had been stopped, and the owner identified defendant as the person who had driven away from the accident in the parking lot.

¶ 6    Decatur police officer Chris Snyder testified he was dispatched to the accident scene but instead went to the location where Clem had stopped defendant. Snyder testified defendant's

breath smelled of alcohol, his eyes were glassy and bloodshot, and his speech was slurred. Defendant stated he had consumed a couple of beers.

¶ 7   Officer Snyder noticed several scrapes on the right side of defendant's motorcycle and the motorcycle was missing its right turn signal lens cover. The scrapes appeared to be fresh. When asked about the lens cover, defendant said it had been missing for a long time. Snyder radioed officers at the accident scene to see if the lens cover was there. Defendant said police would not find the lens cover at the scene of the accident.

¶ 8   Based on defendant's odor of alcohol, bloodshot and glassy eyes, and slurred speech, Snyder requested defendant perform field sobriety tests. During the horizontal gaze nystagmus (HGN) test, defendant did not keep his head still as directed. As a result, Snyder had to restart the test at least twice. The HGN test indicated defendant was under the influence of alcohol. Defendant's performance on the walk-and-turn test also indicated defendant might be under the influence of alcohol. Defendant also performed poorly on the one-legged-stand test. Based on the totality of the circumstances, Snyder arrested defendant for driving under the influence of alcohol. During the search incident to arrest, Snyder found the missing amber lens cover in defendant's sweatshirt pocket. The lens cover had damage consistent with having broken off the motorcycle. It also had paint transfers that matched the color of the paint on the truck that had been scraped in the parking lot. Defendant was adamant he did not put the lens cover in his pocket.

¶ 9   Defendant was taken to the Macon County jail and again performed poorly on the walk-and-turn test and the one-legged-stand test. Officer Snyder testified defendant still showed signs he was under the influence of alcohol. Officer Snyder read defendant the warning-to-motorist form, which defendant appeared to understand. Defendant refused to take the chemical breath test.

¶ 10   At the end of the State's case, the trial court granted defendant's motion for a directed verdict with regard to the charge of operating an uninsured vehicle.

¶ 11   Defendant called witnesses and testified on his own behalf he had two beers at the Wild Dog and nothing at Flashback's. As defendant is not challenging the sufficiency of the evidence to convict, we need not go into the specifics of this testimony.

¶ 12   At the end of defendant's case, the State moved to dismiss the charge alleging defendant failed to report the accident to the police, which the trial court granted. After deliberating, the jury found defendant guilty of driving under the influence of alcohol and not guilty of failing to give information after striking an unattended vehicle.

¶ 13   In March 2013, the trial court sentenced defendant to court supervision for 24 months.

¶ 14   This appeal followed.


¶ 15                                  II. ANALYSIS

¶ 16   Defendant argues the implied-consent statute is facially unconstitutional. According to defendant, under the statute, any person who drives on public roads is "deemed to have given consent" to chemical analysis of the "blood, breath, or urine for the purpose of determining the content of [intoxicating substances]." 625 ILCS 5/11-501.1(a) (West 2012). He also argues any consent is implicitly extracted by law and therefore is not freely and voluntarily given. Accordingly, defendant contends a search warrant is necessary to comport with fourth-amendment protections against unreasonable searches and seizures.

¶ 17     Defendant also argues the statute unconstitutionally punishes individuals who assert their fourth-amendment right to withdraw their implied consent to chemical analysis. The punishment occurs when the trial court allows evidence of a defendant's refusal of chemical testing as evidence on the ultimate issue of driving under the influence. According to defendant, drivers are also punished civilly when they exercise their fourth-amendment right to refuse a consent search by loss of driving privileges for at least one year. Defendant contends he is entitled to a new trial because his conviction resulted from a constitutionally infirm statute.

¶ 18     At issue are several sections of the Illinois Vehicle Code. Section 11-501.1(a) of the Vehicle Code states, in relevant part:

> "Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11-501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11-501 or a similar provision of a local ordinance, or if arrested for violating Section 11-401. If a law enforcement officer has probable cause to believe the person was under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof, the law enforcement officer shall *request* a chemical test or tests which shall be administered at the direction of the arresting officer. The law enforcement agency employing the officer shall designate which of the aforesaid tests shall be administered. A urine test may be administered even after a blood or breath test or both has been administered." (Emphasis added.) 625 ILCS 5/11-501.1(a) (West 2012).

Section 11-501.1(c) provides "[a] person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of the person's privilege to operate a motor vehicle, as provided in Section 6-208.1 of this Code." 625 ILCS 5/11-501.1(c) (West 2012). Section 6-208.1(a)(1) of the Vehicle Code (625 ILCS 5/6-208.1(a)(1) (West 2012)) provides for a summary suspension of a person's driving privileges if he withdraws his implied consent after an officer's request. Section 11-501.2(c) of the Vehicle Code (625 ILCS 5/11-501.2(c) (West 2012)) allows an individual's refusal to take a breath test at the officer's request to be admitted as evidence against the individual.

¶ 19     According to defendant, "[t]his scheme is fundamentally unfair and facially unconstitutional under the United States and Illinois Constitutions." Defendant argues:

> "Because people have a constitutional right to refuse consent to chemical analysis and demand compliance with the warrant requirement in [driving under the influence (DUI)] investigations, it reasonably follows that people cannot be punished for asserting that right. In short, State action that makes the assertion of a constitutional right costly constitutes a punishment for exercising the right–a punishment that is thereby itself a violation of that very constitutional right."

We disagree with defendant as his argument is based on a false premise.

¶ 20        We first note statutes are presumed constitutional. *People v. Devenny*, 199 Ill. 2d 398, 400, 769 N.E.2d 942, 943 (2002). An individual challenging the constitutionality of a statute bears the burden of demonstrating it is unconstitutional. *Id.* Our supreme court has stated:

> "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount. [Citations.] A statute is facially unconstitutional only if there are no circumstances in which the statute could be validly applied. [Citations.] The fact that the statute could be found unconstitutional under some set of circumstances does not establish the facial invalidity of the statute. [Citation.] Thus, a facial challenge must fail if any situation exists where the statute could be validly applied." *People v. Davis*, 2014 IL 115595, ¶ 25, 6 N.E.3d 709.

Further, courts have a duty to construe a statute in a reasonable manner that upholds the validity of the statute. *Devenny*, 199 Ill. 2d at 400, 769 N.E.2d at 943. We apply a *de novo* standard of review when analyzing the constitutionality of a statute. *Id.*

¶ 21        We note the United States Supreme Court has stated a breath test like the one here is a search within the meaning of the fourth amendment. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989). However, the fact a breath test constitutes a search does not mean a warrantless breath test is always unconstitutional. As the Supreme Court has stated:

> "[T]he Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. [Citations.] What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.' [Citation.] Thus, the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' [Citations.]
>
> * * *
>
> We have recognized *** that the government's interest in dispensing with the warrant requirement is at its strongest when, as here, 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.' [Citations.] *** [A]lcohol and other drugs are eliminated from the bloodstream at a constant rate, [citation], and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible. [Citation.] Although the metabolites of some drugs remain in the urine for longer periods of time and may enable the *** estimat[ion] whether the [person] was impaired by those drugs at the time of a covered accident, incident, or rule violation, [citation], the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence." *Id.* at 619-23.

¶ 22        Defendant contends Illinois's implied-consent law is unconstitutional pursuant to the Supreme Court's decision last year in *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). In *McNeely*, the issue before the Supreme Court was "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for *nonconsensual blood testing in all drunk-driving cases*." (Emphasis added.) *Id.* at ___, 133 S. Ct. at 1556.

¶ 23        With regard to nonconsensual blood tests, the Court found a *per se* exigency did not exist, holding each case had to be judged by its own particular facts. *Id.* at ___, 133 S. Ct. at 1561. However, *McNeely* does not support defendant's position in this case. In *Schmerber v.*

*California*, 384 U.S. 757, 770-72 (1966), the Supreme Court held a warrantless, nonconsensual blood test can be performed in certain situations depending on the totality of the circumstances in a particular case. The Court in *McNeely* noted:

> "[T]he natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*[;] [however,] it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1563.

¶ 24    Here, defendant withdrew his consent after his arrest. As a result, there was no warrantless, nonconsensual search. Thus, defendant's fourth-amendment rights could not have been violated. As stated earlier, a statute is only facially unconstitutional if the statute can never be constitutionally applied. Because the implied-consent statute allowed defendant to refuse the police officer's request to take the warrantless chemical breath test, we cannot find the statute facially unconstitutional.

¶ 25    Defendant next argues Illinois's implied-consent statutory scheme unconstitutionally circumvented his constitutional rights by punishing him for exercising his fourth-amendment right to refuse chemical analysis because his driver's license was suspended and his refusal was introduced as evidence against him at his criminal trial (625 ILCS 5/11-501.2(c) (West 2012)). As stated earlier, defendant's argument is built on a false premise. Defendant erroneously believes he always has a constitutional right to refuse a breath test. This is not true. In *McNeely*, the Supreme Court rejected a *per se* approach to warrantless blood draws based on the exigency of dissipation of alcohol in the blood over time. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1556. However, the Court noted natural dissipation of alcohol in the blood *may* support a finding of exigency in a specific case based on the totality of the circumstances. *Id.* at ___, 133 S. Ct. at 1563.

¶ 26    We also note the various opinions in *McNeely* make clear a majority of the Supreme Court justices do not question the constitutionality of implied-consent statutes. In Justice Sotomayor's opinion, which was joined by Justices Scalia, Ginsburg, and Kagan, she stated:

> "As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure [blood alcohol content (BAC)] evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense. See NHTSA Review 173; *supra*, at 1556 (describing Missouri's implied consent law). Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1566.

Further, Chief Justice Roberts, joined by Justices Breyer and Alito, opined:

> "The Court is correct when it says that every case must be considered on its particular facts. But the pertinent facts in drunk driving cases are often the same, and the police should know how to act in recurring factual situations. Simply put, *when a drunk driving suspect fails field sobriety tests and refuses a breathalyzer*, whether a warrant is required for a blood draw should come down to whether there is time to secure one."

(Emphasis added.) *Id.* at ___, 133 S. Ct. at 1574 (Roberts, C.J., concurring in part and dissenting in part, joined by Breyer and Alito, JJ.).

In his dissent, Justice Thomas stated he would hold a "warrantless blood draw does not violate the Fourth Amendment" after any DUI arrest made with probable cause. *Id.* at ___, 133 S. Ct. at 1574 (Thomas, J., dissenting).

¶ 27    Defendant has failed to establish his constitutional rights were violated. As a result, we need not address his argument he is entitled "to a new trial because the constitutional infirmity of Illinois'[s] implied consent statute contributed to his conviction."

¶ 28                                 III. CONCLUSION

¶ 29    For the reasons stated, we affirm defendant's conviction. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2012).

¶ 30    Affirmed.