# Illinois Official Reports

## Appellate Court

---

### *People v. Harris*, 2015 IL App (4th) 140696

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE V. HARRIS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0696 |
| Filed | May 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 13-CF-1750; the Hon. Richard P. Klaus, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James A. Martinkus (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Allison Paige Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel
JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Pope and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Following an April 2014 stipulated bench trial, defendant, Jackie V. Harris, was convicted of one count of aggravated driving under the influence (DUI) of alcohol and one count of aggravated driving with a blood alcohol concentration (BAC) of greater than 0.08 in violation of statute. 625 ILCS 5/11-501(a), (d)(2)(D) (West 2012). The trial court sentenced defendant to 13 years' imprisonment. Defendant appeals, arguing (1) the trial court erred in finding defendant guilty beyond a reasonable doubt; (2) the court erred in refusing to suppress evidence illegally seized; and (3) the court abused its discretion in sentencing defendant to 13 years' imprisonment. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    Count I of the information, filed October 18, 2013, charged defendant with aggravated DUI, alleging defendant drove a vehicle while under the influence of alcohol. Count II, filed December 17, 2013, charged defendant with aggravated driving with a BAC greater than 0.08, alleging defendant drove a vehicle with a BAC greater than 0.08. Both charges alleged defendant had four times previously committed DUI, making the charges Class 1 felonies pursuant to statute. 625 ILCS 5/11-501(d)(2)(D) (West 2012).

¶ 4    After denying defendant's pretrial motion to suppress his BAC, the trial court held a stipulated bench trial based on a stipulation of facts drafted by the State and signed by defense counsel. The trial court found defendant guilty beyond a reasonable doubt on both charges. Defendant then filed a posttrial motion for a new trial and a motion to vacate the conviction and enter a judgment of not guilty notwithstanding the verdict. The court denied both motions and sentenced defendant to 13 years' imprisonment following a sentencing hearing. Defendant filed a motion to reconsider his sentence, which the court also denied.

¶ 5                        A. The Underlying Events

¶ 6    On the evening of October 3, 2013, Cameron Garney called 9-1-1 to report a gray Volvo with Illinois license plate L845333 driving in the wrong lane of traffic and through stop signs without stopping. Urbana police officer Ronald Timmons received a dispatch at 9:35 p.m. concerning a possible DUI. Timmons found a gray Volvo in the reported area going approximately 10 miles per hour. Timmons attempted to initiate a traffic stop and activated his siren multiple times as he followed the Volvo. The Volvo entered the wrong lane of traffic, veered back into the proper lane, and came to a halt. Timmons approached the vehicle and knocked on the window to get defendant's attention.

¶ 7    Upon initiating contact with defendant, Timmons observed the following indicators of impairment: defendant had coordination issues when trying to remove the keys from the vehicle's ignition; defendant spoke in a soft mumble; defendant smelled strongly of alcohol

and had bloodshot eyes; defendant admitted drinking two beers; defendant lacked the basic dexterity to retrieve his driver's license and insurance card without concentrated effort; and defendant had trouble following questions and answering appropriately. Timmons asked defendant to perform field sobriety tests and defendant agreed, but he advised the officer he had problems with the right side of his body due to a stroke, necessitating the use of a cane. Timmons explained and demonstrated the finger-to-thumb test before asking defendant to perform the test. After defendant was told to begin the test, he counted to four while touching the tips of his fingers to his tongue. Timmons again explained the test and defendant performed the test, touching his fingers to his thumb slowly and counting out of sequence.

¶ 8       Defendant performed the ABC test with no issues. Finally, Timmons asked defendant to count backward from 77 to 54. "The defendant started with the test but quickly started mumbling. He recited some random numbers, some of which were not in the sequence requested or even in a counting manner." Timmons performed no further field sobriety tests because defendant was unable to stand or balance.

¶ 9       Urbana police officers Shaun Cook and Matthew McKinney arrived at the scene at about 9:54 p.m. Timmons advised the officers he believed defendant was under the influence of alcohol. McKinney noticed the defendant smelled of alcohol, had bloodshot eyes, and had problems balancing. McKinney and Timmons arrested defendant and McKinney transported defendant to Carle Foundation Hospital at 10:10 p.m. Once there, McKinney wrote defendant a DUI citation and then read defendant the warning to motorist. He explained the chemical tests to be conducted and "defendant indicated he understood and was willing to provide the samples." At 11:31 p.m., Julie Hankins took a blood sample from defendant. At 11:36 p.m., Hankins took a urine sample from defendant. Ultimately, these samples showed defendant had a BAC of 0.303.

¶ 10      At 11:43 p.m., McKinney advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Thereafter, defendant admitted he ate dinner around 5 p.m. and began drinking around 8 p.m. He stated he consumed three or four beers. He stated he was on his way to Merry Ann's Diner for breakfast. McKinney transported defendant to the Champaign County jail, where defendant was booked and given copies of his DUI citation and the warning-to-motorist form.

¶ 11                      B. Pretrial Motion To Suppress

¶ 12      Prior to the stipulated bench trial, defendant filed a motion to suppress evidence of his BAC. Defendant argued no exigent circumstances justified a warrantless blood draw, and McKinney did not obtain a warrant for the blood test. Because the body naturally metabolizing alcohol does not present a *per se* exigency, nothing justified an exception to the warrant requirement. Defendant also argued he did not consent to the blood test and, even if he did consent, any consent was invalid as it was not informed consent nor was it voluntary consent. Because the warning to motorist did not inform the defendant the results of the blood test could be used against him in a criminal trial, his consent was not informed.

¶ 13      At a hearing on the motion to suppress, defendant testified he was given a copy of the warning to motorist but no one explained the results of the blood test could be used against him in a criminal prosecution. He testified he was "[j]ust following orders" when he agreed to the testing, and he felt he had no choice in the matter. On cross-examination, defendant testified he did not tell the nurse or the officer he did not want the blood test or the urine test.

¶ 14 McKinney testified he arrived at the scene after Timmons performed the field sobriety tests. He noticed defendant smelled of alcohol and had slurred speech. He arrested defendant for DUI and took defendant into custody. McKinney then placed defendant in the back of the squad car and took him to Carle Foundation Hospital. McKinney testified he provided defendant with the warning to motorist and Cook provided a lay explanation of the contents of the warning. McKinney further testified he did not recall explaining to defendant the results of the tests could be used against him in a criminal prosecution.

¶ 15 The trial court found the only discrepancy in the testimony was whether defendant received an oral explanation of the warning to motorist. The court also found defendant's testimony, both on direct and cross, showed he consented to the testing. The court denied the motion to suppress. Following the court's ruling, defense counsel told the court, "There's a very high percent, chance that this case will be presented to you as a stipulated bench trial."

¶ 16                    C. Stipulated Bench Trial and Posttrial Motions

¶ 17 The parties presented the trial court with a 35-paragraph stipulation. Of the 35 paragraphs, 34 began with either the phrase "That if called as a witness, [witness] would [state, testify, indicate]" or the phrase "That if called to testify, [witness] would [state, testify, indicate]" followed by the facts summarized in Part I(A) of this disposition. No paragraph stipulated to the sufficiency of the evidence.

¶ 18 After reading the stipulation, the trial court proceeded to admonish defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012). The court found the stipulation was entered into knowingly and voluntarily. Ultimately, the court found defendant guilty of both charges beyond a reasonable doubt.

¶ 19 Defendant filed two posttrial motions, one for a new trial and one for a judgment of not guilty notwithstanding the verdict. Defendant reiterated his suppression argument, *i.e.*, the blood test, performed without a warrant and without consent, was an illegal search. He further argued the stipulation contained only hypothetical statements witnesses might make if called to testify and was an insufficient and inappropriate basis for a conviction. The court denied both motions.

¶ 20                                  D. Sentencing

¶ 21 The presentence investigation report indicated defendant's previous DUI convictions. The first DUI occurred in May 1988; the second in October 1990; the third sometime in 1997; and the fourth in March 1998. His intensive probation for the 1990 DUI was revoked in 1991, with no explanation in this record as to the reasons for revocation. He was ordered to complete substance-abuse treatment in connection with the 1997 DUI. Probation for that offense was revoked; however, the date and circumstances of the revocation are unclear from the record. He was ordered to obtain a substance-abuse evaluation in connection with the March 1998 DUI. Probation for that DUI was revoked in 1999 for failure to report and obtain a substance-abuse evaluation and defendant was sentenced to 30 months' imprisonment. In connection with a 2004 misdemeanor domestic-battery charge, defendant was ordered to obtain a substance-abuse evaluation and follow all treatment recommendations. The presentence investigation report indicates defendant complied with the requirement.

¶ 22    Prior to a sentencing hearing, defendant submitted eight letters for mitigation evidence. Psychologists from the Department of Veterans Affairs hospital (VA) wrote letters to confirm defendant voluntarily enrolled in the Substance Abuse Rehabilitation Program in early December 2013. The letters confirmed he successfully completed the entire six-week intensive outpatient program, was an active and willing participant, and offered pertinent insights and questions during the program. He continued attending outpatient aftercare treatments twice a week until his incarceration for the charges in this case.

¶ 23    A different psychologist wrote a letter confirming defendant sought his care in October 2013. Defendant reported having run out of his antidepressant medications due to an issue with the VA and through no fault of his own. The letter noted the possibility defendant relapsed because his depression returned without his medications.

¶ 24    Letters from various friends and family indicated defendant served in the military for 14 years and had struggled with alcoholism for many years. Sometime in the late 1990s, defendant entered into substance-abuse treatment and completed inpatient treatment in 2003. He achieved and maintained sobriety for more than 10 years. During that time, defendant enrolled in community college and eventually graduated with a bachelor's degree from Eastern Illinois University. Upon graduation, he was immediately accepted into a master's program, which he had not completed.

¶ 25    In 2012, defendant's older brother, Gregory, was diagnosed with cancer. Defendant was Gregory's main caretaker, driving him to appointments and caring for him until his death in March 2013. Defendant took Gregory's death hard, and his sister's letter indicates this loss contributed to defendant's relapse. Defendant also owns his own home and regularly volunteers at the Salvation Army. Multiple neighbors wrote letters indicating defendant is a dependable and respectful neighbor. Defendant also takes care of his elderly mother, driving her to doctor's appointments and running errands for her due to her failing health.

¶ 26    Additionally, four witnesses testified in mitigation at defendant's sentencing hearing. First, the Reverend Cypress Hughes testified he advised defendant on his education, first at community college and later when defendant enrolled at Eastern Illinois University. Hughes testified he talked to defendant regularly, sometimes multiple times a day. He testified defendant is a compassionate, interesting, decent person. Second, Robert Sally testified he had served in the military with defendant and defendant was dedicated to his education and believes strongly in helping people. Third, Michael Angel testified he had known defendant for 43 years. Defendant's father was an alcoholic, who eventually passed away due to that disease. Angel testified Gregory was instrumental in helping defendant achieve and maintain sobriety in the late 1990s. Angel testified defendant maintained his sobriety for a time after Gregory's death, but also attributed this loss to defendant's relapse. Finally, defendant's neighbor and significant other, Kathleen Golding, testified. Golding described defendant as "responsible and conscientious, good hearted, and generous." In her opinion, defendant is a useful, contributing member of society and his family, especially his mother, depends on his support.

¶ 27    The State argued defendant's past criminal history shows multiple opportunities to address his substance-abuse problems. The State also noted the prior interventions with the criminal justice system failed to deter defendant from driving drunk. The State asked for a sentence of 11 years' imprisonment. Defense counsel highlighted defendant's substantial period of sobriety, his ailing health, his network of community support, and his own voluntary efforts to achieve sobriety following this DUI. Defendant asked for a sentence between four and seven

years. The court sentenced defendant to 13 years' imprisonment, with 2 years' mandatory supervised release and a $6,000 fine. Thereafter, the court denied defendant's motion to reconsider the sentence.

¶ 28    This appeal followed.

¶ 29                                  II. ANALYSIS

¶ 30    On direct appeal, defendant argues (1) the trial court erred in finding defendant guilty beyond a reasonable doubt; (2) the court erred in refusing to suppress evidence illegally seized; and (3) the court abused its discretion in sentencing defendant to 13 years' imprisonment. Specifically, defendant contends the parties stipulated only to what the witnesses, if called, would testify and did not stipulate as to the evidence in the case. Because they stipulated only to conditional statements, defendant argues the trial court did not have any evidence of the underlying facts sufficient to convict him beyond a reasonable doubt. Defendant also argues the warrantless blood test violated his fourth-amendment rights, no exception to the warrant requirement is applicable, and the evidence of his BAC should have been suppressed. Alternatively, defendant argues his consent was uninformed and therefore involuntary and invalid as an exception to the warrant requirement. Finally, defendant argues the court abused its discretion in sentencing him to an excessive term of 13 years' imprisonment.

¶ 31                            A. Stipulated Bench Trial

¶ 32    For decades, courts in Illinois have grappled with stipulated bench trials. See, *e.g.*, *People v. Rowell*, 229 Ill. 2d 82, 890 N.E.2d 487 (2008); *Thornton v. Illinois Founders Insurance Co.*, 84 Ill. 2d 365, 418 N.E.2d 744 (1981); *People v. Stepheny*, 56 Ill. 2d 237, 306 N.E.2d 872 (1974); *People v. Manuel*, 242 Ill. App. 3d 20, 609 N.E.2 995 (1993); *People v. Sullivan*, 72 Ill. App. 3d 533, 391 N.E.2d 241 (1979). A stipulated bench trial is attractive because it provides a defendant the benefits and convenience of a guilty plea, yet preserves any pretrial objections, such as a motion to suppress, for appellate review. *People v. Horton*, 143 Ill. 2d 11, 22, 570 N.E.2d 320, 325 (1991). However, if a stipulated bench trial amounts to a guilty plea, any nonjurisdictional pretrial objections are forfeited on appeal. *Horton*, 143 Ill. 2d at 22, 570 N.E.2d at 325. The supreme court has held there are two specific circumstances in which a stipulated bench trial is tantamount to a guilty plea: "(1) the State presents its entire case by stipulation *and* defendant fails to preserve a defense; *or* (2) the stipulation concedes that the evidence is sufficient to support a guilty verdict." (Emphases in original.) *People v. Clendenin*, 238 Ill. 2d 302, 324, 939 N.E.2d 310, 323 (2010).

¶ 33                        1. *Evidence Before the Trial Court*

¶ 34    The majority of Illinois cases involve the question whether a stipulated bench trial is tantamount to a guilty plea. However, here defendant sets forth a rather novel argument regarding what constitutes evidence from stipulated testimony in what appears to be a stipulated bench trial. Defendant argues the only evidence before the court consists of the fact that various witnesses would testify if called. Defendant further argues the substance of the testimony is not in evidence before the court because defendant did not stipulate to the truth of the underlying statements. Defense counsel phrased the argument before the trial court as follows:

"The evidence before you right now consists only of what is before you in the stipulation, and *** the stipulation I think is a little unusual in that it says it presents the following stipulation of facts: *** that if these various witnesses were called they would state the following. So the question then becomes, based upon the stipulation before you, do you have evidence before you as to what they would say or simply what a witness if called would state. There is a difference between *** stipulating as to the evidence in the case and stipulating as to what a witness[,] *if called*[,] would testify." (Emphasis added.)

¶ 35    While we agree a difference exists between stipulating as to the evidence in a case and stipulating as to what a witness would testify, we emphatically disagree the latter stipulation removes the substance of a witness's testimony from the evidence a trial court may consider in a stipulated bench trial. As an initial matter, and contrary to defendant's argument, we note the language used in the stipulation is not unusual at all. Many cases discuss stipulations to testimony a witness, if called, would give. See, *e.g.*, *Clendenin*, 238 Ill. 2d at 308, 939 N.E.2d at 314 (A portion of the stipulation read, " '[i]f called as a witness, [the detective] would testify ***.' "); *People v. Woods*, 214 Ill. 2d 455, 461, 828 N.E.2d 247, 251 (2005) (The stipulation began, " '[i]f called to testify, [the witness] would be qualified as an expert *** and would testify ***.' "); *People v. Hare*, 25 Ill. 2d 321, 323, 185 N.E.2d 178, 179 (1962) ("The record discloses that defense counsel stipulated to what certain witnesses would testify if they were present in court."); *People v. Echavarria*, 362 Ill. App. 3d 599, 602, 840 N.E.2d 815, 819 (2005) (Fourth District: "The parties then stipulated, if called as a witness, John Martin would testify ***."). While none of these cases called for consideration of the implication of the conditional statement, using the phrase "if called" or "if present" before setting forth the stipulated witness testimony is clearly a common practice and does not warrant the scrutiny defendant requests.

¶ 36    Defendant argues the "potential facts that might or could be before the trial court[,] *** dependent and conditioned upon the occurrence of another fact," are an inappropriate basis for a finding of proof beyond a reasonable doubt. We disagree. Defendant stipulated to the admission of the State's summary of the testimony and did not present any further evidence. "Having not presented evidence to controvert the stipulated testimony, defendant may not now complain that this stipulated testimony was not worthy of consideration and that the court's judgment, based upon such consideration, was error." *People v. Kane*, 2013 IL App (2d) 110594, ¶ 19, 5 N.E.3d 737. Defendant is bound by the stipulation he entered into and if he wanted to challenge the weight or adequacy of the testimony, he should have done so before the trial court. See *People v. Phillips*, 217 Ill. 2d 270, 284, 840 N.E.2d 1194, 1202 (2005) ("Since an evidentiary stipulation is, in effect, nothing more than an acknowledgement of what a witness would testify to if called, and a concomitant decision not to challenge the testimony the witness *would* give, a stipulation is not much different from a decision not to cross-examine." (Emphasis in original.)). See also *United States v. Spann*, 515 F.2d 579, 583 (10th Cir. 1975) ("Of course, a stipulation as to the testimony of a witness would give if called, although it may constitute evidence of the facts covered, is not an admission of the truth of such testimony and does not prevent a party from attacking it as he might attack the testimony itself, had it been given."). Counsel cannot on one hand argue this proceeding was a genuine stipulated bench trial preserving appellate review of the suppression issue without actually

going to trial, then turn around and argue on the other hand the nature of the stipulation is inappropriate for proof beyond a reasonable doubt.

¶ 37    Stipulations should be construed to give effect to the intent of the parties, and stipulations are "binding and conclusive on the parties." *People v. Early*, 158 Ill. App. 3d 232, 239, 511 N.E.2d 847, 852 (1987). See also *People v. Baynes*, 88 Ill. 2d 225, 239, 430 N.E.2d 1070, 1076 (1981); *People v. Calvert*, 326 Ill. App. 3d 414, 419, 760 N.E.2d 1024, 1028 (2001). In the context of the record, the parties clearly intended to stipulate to the evidence in this case. Indeed, defense counsel initially brought the likelihood of a stipulated bench trial to the court's attention. By stipulating to the testimony, defense counsel placed the State in a position of believing the substance of the testimony was in evidence. "It is unlikely that the State would have agreed to [the witness's] stipulated testimony, and thereby forfeit the opportunity to place the [witness] on the witness stand[,] *** had not the stipulation been intended to eliminate the need for defending this testimony against a challenge ***." *Woods*, 214 Ill. 2d at 474, 828 N.E.2d at 259. Moreover, were we to adhere to defendant's position, stipulated bench trials would become get-out-of-jail-free cards. Any stipulation to a witness's testimonial evidence would be deficient under this view. This argument is untenable, and we hold stipulations to testimony a witness would give if called may properly form a basis for a finding of guilt beyond a reasonable doubt by a trial court in the course of a bench trial.

¶ 38    We note the stipulation did not have a paragraph stipulating to the sufficiency of the evidence; in which case it would have forfeited, that is, procedurally defaulted, all nonjurisdictional issues. Counsel properly alerted the trial court to defendant's objection to the sufficiency of the stipulated testimony. Counsel also preserved defendant's constitutional claim, so this stipulated bench trial was not tantamount to a guilty plea and defendant has not forfeited his claims on appeal. *Clendenin*, 238 Ill. 2d at 324, 939 N.E.2d at 323.

¶ 39                    2. *Sufficiency of the Stipulated Testimony*

¶ 40    We will briefly address the sufficiency of the stipulated testimonial evidence before the trial court. When addressing the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). "The testimony of the arresting officer by itself may be sufficient to sustain a DUI conviction." *People v. Hires*, 396 Ill. App. 3d 315, 318, 920 N.E.2d 1083, 1085 (2009). It is not this court's function to retry a defendant who challenges the sufficiency of the evidence. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 322 (2011). Rather, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

¶ 41    Driving under the influence of alcohol has two elements: (1) the defendant was driving or in physical control of an automobile; and (2) the defendant was under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2012). See also *Hires*, 396 Ill. App. 3d at 318, 920 N.E.2d at 1085. DUI with a BAC over 0.08 also has two elements: (1) the defendant was driving or in physical control of an automobile; and (2) the defendant's BAC was over 0.08. 625 ILCS 5/11-501(a)(1) (West 2012). See also *People v. Martin*, 2011 IL 109102, ¶ 26, 955 N.E.2d 1058. "[P]rior DUI convictions do not constitute an element of an aggravated DUI charge." *People v. Lush*, 372 Ill. App. 3d 629, 634, 867 N.E.2d 1199, 1203 (2007).

¶ 42    "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act

with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000). The stipulation reflected defendant's coordination issues and officers' observations that defendant smelled of alcohol, had bloodshot eyes, and had difficulty following questions and answering appropriately. Moreover, defendant's finger-to-tongue interpretation of the finger-to-thumb sobriety test and his trouble with the backward-counting test further evidence his intoxication and inability to think and act with ordinary care. The stipulation also reflected defendant's BAC was 0.303. Defendant does not dispute he was driving a motor vehicle. A rational trier of fact clearly could have found defendant was under the influence of alcohol, his BAC was over 0.08, and he was driving or in actual physical control of a motor vehicle. The evidence was sufficient to find guilt beyond a reasonable doubt on both DUI charges.

¶ 43                                   B. Suppression of Defendant's BAC

¶ 44     In reviewing a trial court's denial of a motion to suppress, we apply the two-part standard of review the Supreme Court set forth in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). See also *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006) (adopting the two-part standard of review from *Ornelas*). We give deference to a trial court's findings of fact, unless such findings are against the manifest weight of the evidence. *People v. Almond*, 2015 IL 113817, ¶ 63. However, we review *de novo* the ultimate legal question of whether suppression of the evidence was required. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).

¶ 45     The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution of 1970 both protect the right of individuals to be free from unreasonable searches. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "[A] warrantless search of the person is reasonable only if it falls within a recognized exception." *Missouri v. McNeely*, 569 U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013). Exceptions to the warrant requirement include, *inter alia*, exigent circumstances and consent. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1559; *People v. Hasselbring*, 2014 IL App (4th) 131128, ¶ 42, 21 N.E.3d 762 (" 'A well-settled, specific exception to the fourth amendment's warrant requirement is a search conducted pursuant to consent.' " (quoting *People v. Pitman*, 211 Ill. 2d 502, 523, 813 N.E.2d 93, 107 (2004), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973))). A blood test to determine a defendant's BAC is a search subject to the warrant requirement. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558. See also *Schmerber v. California*, 384 U.S. 757 (1966).

¶ 46     Defendant contends *McNeely* calls the constitutionality of Illinois's implied-consent statute into question because (1) the only warning the statute requires does not inform a defendant the results of a blood test may be used in a criminal prosecution; and (2) the statute affords no right to refuse consent; therefore, any consent implied by the statute is constitutionally infirm because it is not informed and voluntary consent. Defendant assumes *McNeely* requires a defendant's *informed* consent to qualify as an exception to the warrant requirement and argues the implied-consent statute does not produce such consent. However, *McNeely* requires no such thing.

¶ 47     In *McNeely*, the Supreme Court considered whether the natural dissipation of alcohol in the bloodstream qualified as "a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1556. The Court found the metabolization of alcohol did not present a *per se* exigency allowing all nonconsensual, warrantless blood tests in

DUI cases. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1563. While the metabolization of alcohol "may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1563. The Supreme Court did not overrule *Schmerber*; rather, it upheld the application of the totality-of-the-circumstances test in determining whether an exigency exists, and it declined to find a categorical exception to the warrant requirement for blood tests in DUI cases. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1563. See also *Hasselbring*, 2014 IL App (4th) 131128, ¶ 41, 21 N.E.3d 762.

¶ 48    Again, *McNeely* addressed the very narrow question of whether a *nonconsensual*, warrantless blood test is categorically reasonable under the fourth amendment because the natural dissipation of alcohol in the bloodstream presents a *per se* exigency. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1556. That the Supreme Court declined to accept a categorical exigent-circumstances exception to the warrant requirement has no bearing on whether implied-*consent* statutes are constitutional. Indeed, the splintered opinions in *McNeely* "make clear a majority of the Supreme Court justices do not question the constitutionality of implied-consent statutes." *People v. Gaede*, 2014 IL App (4th) 130346, ¶ 26, 20 N.E.3d 1266.

¶ 49    Consent to a blood test need only be voluntary in order to provide a valid basis for an exception to the warrant requirement. See, *e.g.*, *People v. Alvarado*, 268 Ill. App. 3d 459, 464, 644 N.E.2d 783, 787 (1994) (An intentional abandonment or relinquishment of a known right to refuse testing "did *not* apply to fourth amendment rights designed to protect the security of one's privacy against arbitrary intrusion by the police." (Emphasis in original.)). A defendant's consent is involuntary if " 'his will has been overborne and his capacity for self-determination critically impaired.' " *Schneckloth*, 412 U.S. at 225 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). "[C]ustody alone does not render consent involuntary ***." *Alvarado*, 268 Ill. App. 3d at 467, 644 N.E.2d at 789. Factors surrounding the circumstances of the custody inform the voluntariness inquiry, including the time of the arrest, the use of force, whether " 'the police used the custody to make *repeated* requests for consent, and *** [whether] the custody was used as leverage, in the sense that the arrestee was told he would be released if he gave consent.' (Emphasis in original.)" *Alvarado*, 268 Ill. App. 3d at 467, 644 N.E.2d at 789 (quoting 3 Wayne R. LaFave, Search and Seizure § 8.2(b), at 183 (2d ed. 1987), at 61 (Supp. 1994)).

¶ 50    In this case, the record gives no indication the police repeatedly requested defendant submit to a blood test or used undue influence to obtain defendant's consent. While McKinney provided defendant the warning to motorist, consent to a chemical test is not coerced and is not rendered involuntary merely by a law-enforcement officer's reading of the warning to motorist that accurately informs defendant of the consequences for refusing the test. The Supreme Court has addressed the issue of voluntariness with respect to implied-consent statutes. *South Dakota v. Neville*, 459 U.S. 553 (1983). The Supreme Court of Minnesota discussed *Neville* in a case remanded to it by the United States Supreme Court for reconsideration in light of *McNeely*. *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013). The circumstances in *Brooks* were remarkably similar to those in the case at bar. The defendant was taken to a hospital after having been arrested for DUI. At the hospital, the officer read him the implied-consent warning, which "informs drivers that Minnesota law requires them to take a chemical test for the presence of alcohol, that refusing to take a test is a crime, and that drivers have the right to

talk to a lawyer before deciding whether to take a test." *Brooks*, 838 N.W.2d at 565. We find the Minnesota Supreme Court's reliance on *Neville* persuasive and quote from the *Brooks* decision:

> "The Supreme Court and our court have addressed the issue of coercion within the context of implied consent statutes. In [*Neville*], the Supreme Court held that a driver is not coerced into testifying against himself in violation of the Fifth Amendment when the State introduces his refusal to submit to chemical tests into evidence in a criminal trial for driving under the influence. The Court concluded that 'the State did not directly compel respondent to refuse the test, for it gave him the choice of submitting to the test or refusing.' [Citation.] While the 'choice to submit or refuse to take' the test may be a 'difficult' one, the Court held that the decision was 'not an act coerced by the officer.' [Citation.] We followed the analysis in *Neville* when we held that Minnesota's implied consent law, even though it makes it a crime to refuse testing, also does not coerce a driver into testifying against himself. [Citation.]
>
> *Neville* and *McDonnell* examine the issue of coercion within the context of the Fifth Amendment privilege against self-incrimination. But the question in both cases was whether the existence of a consequence for refusing to take a chemical test rendered the driver's choice involuntary. [Citations.] We address the same question in the context presented here when we examine whether Brooks's consent was voluntary, as the State argues, or whether it was coerced, as Brooks argues." *Brooks*, 838 N.W.2d at 570.

The officers in *Neville* did not warn the defendant the test results could be used against him in a criminal prosecution. Nonetheless, the Court held "that such a failure to warn was not the sort of implicit promise to forego use of evidence that would unfairly 'trick' [defendant] if the evidence were later offered against him at trial." *Neville*, 459 U.S. at 566. While the evidence at issue in *Neville* was the defendant's *refusal* to take the test, in *dicta* the Court stated, "Even though the officers did not specifically advise respondent that the test results could be used against him in court, no one would seriously contend that this failure to warn would make the test results inadmissible, had respondent chosen to submit to the test." *Neville*, 459 U.S. at 565 n.16. This is precisely what defendant contends in the case at bar.

¶ 51    Defendant contends Illinois law affords no right to refuse chemical testing. *People v. Jones*, 214 Ill. 2d 187, 199-200, 824 N.E.2d 239, 246 (2005). Presumably, defendant argues consent cannot be voluntary where there is no option to refuse. This argument fails to persuade us defendant's fourth-amendment rights were violated in this case. Defendant has not established McKinney did or said anything to indicate defendant had no right to refuse. The warning to motorist reads, in pertinent part, "you are warned: 1. *If you refuse* or fail to complete all chemical tests *requested* *** 2. *If you submit* to a chemical test(s) ***." (Emphases added.) The warning then informs a defendant of the various civil consequences attendant to a refusal to submit to testing. The warnings clearly indicate a choice between consenting to testing and withdrawing consent to testing. Nothing in the record indicates defendant withdrew his consent. Moreover, this court recently decided a similar claim, stating, "defendant withdrew his consent after his arrest. As a result, there was no warrantless, nonconsensual search. Thus, defendant's fourth-amendment rights could not have been violated. *** Because the implied-consent statute allowed defendant to refuse the police officer's request to take the warrantless chemical breath test, we cannot find the statute facially unconstitutional." *Gaede*, 2014 IL App (4th) 130346, ¶ 24, 20 N.E.3d 1266.

¶ 52　　　　McKinney, by providing defendant with only the warning to motorist, did not coerce or force defendant to agree to the blood test such that defendant's consent was rendered involuntary. Defendant voluntarily consented to the blood test and clearly had a choice whether to consent to testing. We hold the consensual blood test conducted in this instance did not violate defendant's fourth-amendment rights and affirm the trial court's denial of defendant's motion to suppress.

¶ 53　　　　　　　　　　　　　　C. Abuse of Discretion in Sentencing

¶ 54　　　　When imposing sentence, a trial court must balance a defendant's rehabilitative potential with the seriousness of the offense. Ill. Const. 1970, art. I, § 11; *People v. Bien*, 277 Ill. App. 3d 744, 756, 661 N.E.2d 511, 520 (1996). Each sentencing decision must be based on the particular circumstances of the case and the court must consider factors such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). The trial court, having observed the defendant and proceedings, is better able to consider these factors. *Fern*, 189 Ill. 2d at 53, 723 N.E.2d at 209. The trial court's sentencing decision is afforded substantial weight upon review, and a court of review must not substitute its judgment simply because it would have balanced the factors differently. *Fern*, 189 Ill. 2d at 53, 723 N.E.2d at 209. See also *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656.

¶ 55　　　　The presentence investigation report reflects defendant's four prior DUI convictions. Aggravated DUI for a fifth DUI conviction is a nonprobational Class 1 felony. 625 ILCS 5/11-501(d)(2)(D) (West 2012). The statute provides for a term of imprisonment of not less than 4 years and not more than 15 years. 730 ILCS 5/5-4.5-30 (West 2012). The State asked for an 11-year sentence. Defendant asked for a term of imprisonment between four and seven years in light of his potential for rehabilitation and other mitigating evidence. The trial court imposed a 13-year sentence. A sentence within the statutory range will not be deemed excessive, and will not be disturbed, unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Romero*, 387 Ill. App. 3d 954, 978, 901 N.E.2d 399, 419-20 (2008).

¶ 56　　　　The trial court expressly stated it "considered the presentence report, the drug and alcohol evaluation, the documentary evidence submitted in mitigation, the testamentary [*sic*] evidence submitted in mitigation, [the] arguments, and the defendant's exercise of his right of allocation [*sic*]." The court also noted defendant's previous DUI convictions and defendant's previous chances to deal with substance-abuse issues. The court found it "blindingly obvious" defendant was "a clear and present danger to the public because he will drink and drive, and I cannot permit that to be the case."

¶ 57　　　　Defendant argues the trial court did not actually consider the substantial mitigation evidence or defendant's potential for rehabilitation. A court is not required to expressly outline every factor it considers for sentencing and we presume the court considered all mitigating factors on the record in the absence of explicit evidence to the contrary. *People v. Meeks*, 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14 (1980). There is no such explicit evidence the court did not consider the mitigating evidence here.

¶ 58　　　　The trial court noted defendant had been previously convicted of DUI four times. Moreover, defendant had a BAC of 0.303, indicating, as the trial court stated, "either he was sober for a significant period of time prior to the time that he engaged in this behavior, in which

- 12 -

case he was severely under the influence of alcohol, or what I am hearing is not accurate, which is that he wasn't sober for that period of time and he did have a tolerance for alcohol. It can't be both." The trial court considered defendant's period of sobriety and his struggle with alcoholism. The court also noted, "Clearly Mr. Harris has people who love him," indicating the court considered defendant's family ties and obligations. While we may not have weighed the factors in mitigation and aggravation in the same way the trial court here did, we cannot say the court abused its discretion in sentencing defendant to 13 years' imprisonment on his fifth felony DUI conviction. Simply because rehabilitative and mitigating factors are present does not entitle them to greater weight than the seriousness of the offense. *People v. Coleman*, 166 Ill. 2d 247, 261, 652 N.E.2d 322, 329 (1995). The trial court did not abuse its discretion in imposing a within-guidelines sentence of 13 years' imprisonment.

¶ 59                                   III. CONCLUSION

¶ 60        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 61        Affirmed.